STATE of Minnesota, Respondent,

v.

Jason Michael WISEMAN, Appellant.

No. A11–1191.

Court of Appeals of Minnesota.

July 16, 2012.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Nicole E. Nee, Assistant Dakota County Attorney, Hastings, MN, for respondent.

Jeffrey S. Sheridan, Eagan, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and MUEHLBERG, Judge.*

## OPINION

WRIGHT, Judge.

Appellant challenges his conviction of first-degree driving while impaired for refusal to submit to a chemical test, arguing that the imposition of criminal penalties for refusing to submit to chemical testing violates his substantive-due-process rights by criminalizing the passive or nonviolent refusal to submit to a warrantless police search. We affirm.

## FACTS

On February 12, 2010, Officer Nicholas Stevens of the Lakeville Police Department observed a vehicle turn left from Pilot Knob Road onto Upper 182nd Street in Lakeville in violation of a red left-turn arrow. Officer Stevens followed the vehicle and observed it turn right without signaling. Shortly thereafter, Officer Stevens stopped the vehicle and identified the driver as appellant Jason Michael Wiseman. Wiseman exhibited bloodshot and watery eyes and slurred speech. Officer Stevens also detected the odor of an alcoholic beverage and learned that Wiseman's driver's license was subject to a "no use of alcohol" restriction. Wiseman attempted and failed multiple field sobriety tests, and his preliminary-breath-test result registered over the legal limit. Officer Stevens arrested Wiseman and transported him to the Lakeville Police Department, where Wiseman was read the implied consent advisory. Wiseman told Officer Stevens that he understood the advisory and declined to consult with an attorney. Wiseman did not agree to undergo a chemical test of his blood or urine, stating that agreeing to such testing is "not within [his] constitutional rights."

Wiseman was charged with first-degree driving while impaired (DWI), a violation of Minn.Stat. § 169A.20, subd. 1(1) (2008), and first-degree DWI for refusal to submit to chemical testing, a violation of Minn. Stat. § 169A.20, subd. 2 (2008). Wiseman moved to dismiss the chemical-test-refusal charge, arguing that the statute criminalizing chemical-test refusal is unconstitutional because he has a constitutional right to refuse to consent passively or nonviolently to a warrantless police search and thereby to refuse to submit to a chemical test. The district court denied the motion, con-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

cluding that no such constitutional right exists.

Following Wiseman's waiver of his right to a jury trial and submission of the case on stipulated facts pursuant to Minn. R.Crim. P. 26.01, subd. 3, and *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980), the district court found Wiseman guilty of first-degree DWI for refusal to submit to chemical testing and dismissed the other DWI charge. This appeal followed.

## ISSUE

Does Minn.Stat. § 169A.20, subd. 2, which imposes criminal penalties for refusing to submit to chemical testing, violate an individual's substantive-due-process rights by criminalizing the passive or nonviolent refusal to submit to a warrantless police search?

## ANALYSIS

 Wiseman argues that Minn.Stat. § 169A.20, subd. 2, which makes it a crime for a driver "to refuse to submit to a chemical test" for the presence of alcohol, violates his right to substantive due process because it criminalizes the passive or nonviolent refusal to consent and thereby submit to a warrantless police search. The constitutionality of a statute presents a question of law, which we review de novo. *State v. Melde,* 725 N.W.2d 99, 102 (Minn.2006). In doing so, we presume that Minnesota statutes are constitutional and will strike down a statute as unconstitutional only if absolutely necessary. *Id.* The party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision. *Miller Brewing Co. v. State,* 284 N.W.2d 353, 356 (Minn. 1979).

 The United States Constitution and the Minnesota Constitution protect an individual's right to due process of law. U.S. Const. amends. V, XIV, § 1; Minn.

Const. art. I, § 7. Procedural due process requires notice and an opportunity to be heard. *Sisson v. Triplett,* 428 N.W.2d 565, 568 (Minn.1988). By contrast, "substantive due process protects individuals from 'certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'" *In re Linehan,* 594 N.W.2d 867, 872 (Minn. 1999) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990)). Substantive-due-process protections limit what the government may do in both its legislative and its executive capacities. *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998). "[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue." *Id.* We review Wiseman's challenge under both federal and state precedent because the due-process protections of the United States Constitution and the Minnesota Constitution are coextensive. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988).

 When abusive executive action is challenged under the due-process clause, we consider whether the challenged action implicates a fundamental right and "shocks the conscience." *Id.* at 846–47, 118 S.Ct. at 1716–17; *Slusarchuk v. Hoff,* 346 F.3d 1178, 1181–82 (8th Cir.2003); *Mumm v. Mornson,* 708 N.W.2d 475, 487 (Minn. 2006). Conversely, when a legislative enactment is challenged under the due-process clause, as in this case, we apply an appropriate level of scrutiny to the law depending on whether a fundamental right is implicated. If the challenged law implicates a fundamental right, we subject the law to strict scrutiny. *Linehan,* 594 N.W.2d at 872; *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983). A law subject to strict scrutiny will be upheld only if the state demonstrates that the law is necessary to serve a compelling state in-

terest and narrowly tailored to serve that interest. *Linehan,* 594 N.W.2d at 872; *Essling,* 335 N.W.2d at 239. If the legislative enactment does not implicate a fundamental right, substantive due process requires only that the law is not arbitrary or capricious or that it reflects a reasonable means to a permissible state objective. *State v. Behl,* 564 N.W.2d 560, 567 (Minn. 1997). Accordingly, we first determine whether Wiseman has identified a fundamental right implicated by Minnesota's chemical-test-refusal statute.

 Fundamental rights and liberties are those that are "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997) (quotations and citations omitted). In addition to the freedoms protected by the Bill of Rights, the "liberty" protected by the Due Process Clause includes the right to "bodily integrity." *Id.* at 720, 117 S.Ct. at 2267. But courts are reluctant to expand the concept of substantive due process because doing so places a matter outside the scope of public debate and legislative action. *Id.* at 720, 117 S.Ct. at 2267–68. Moreover, when there exists "an explicit textual source of constitutional protection" against a particular government action, we must analyze the challenged action under the specific constitutional provision rather than as a possible violation of substantive-due-process rights. *Lewis,* 523 U.S. at 842, 118 S.Ct. at 1714; *see also Dokman v. Cnty. of Hennepin,* 637 N.W.2d 286, 295 (Minn.App.2001) (holding that the court need not address a due-process challenge because appellant's challenge could be considered under the Fourth Amendment).

 Here, Wiseman's challenge does not implicate a specific constitutional provision. Indeed, Wiseman acknowledges that the police were justified in collecting a sample for chemical testing under the exigent-circumstances exception to the warrant requirement without offending the Fourth Amendment to the United States Constitution or article I, section 10, of the Minnesota Constitution. *Schmerber v. California,* 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966); *State v. Netland,* 762 N.W.2d 202, 212–13 (Minn.2009). Wiseman also contends that his challenge is not based on his constitutional rights against self-incrimination, U.S. Const. amend. V.; Minn. Const. Art. I, § 7, which are not implicated by the compelled production of a blood or urine sample for chemical testing because such evidence is nontestimonial. *See Schmerber,* 384 U.S. at 765, 86 S.Ct. at 1832–33; *accord McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848, 856 (Minn.1991). Rather, Wiseman contends that the chemical-test-refusal statute infringes his fundamental right to passively or nonviolently "refuse to consent to a warrantless search" and thereby refuse to produce what the police seek. He asserts that this fundamental right, although lacking an explicit textual source of constitutional protection, is a necessary "corollary" to his constitutional right to be free from unreasonable searches, U.S. Const. amend. IV; Minn. Const. art. I, § 10, and the constitutional preference for warrants.

 We begin our consideration of Wiseman's argument by observing that Minnesota law criminalizes a person's refusal to "submit to a chemical test," not a person's refusal to *consent* to a chemical test.[1] *See* Minn.Stat. § 169A.20, subd. 2.

---

1. To "submit" is "[t]o yield or surrender (oneself) to the will or authority of another" or "[t]o subject to some condition or process." *The American Heritage Dictionary* 1790 (3rd

Although Minnesota's "implied consent" law provides that any person who drives a motor vehicle within the state "consents" to have his or her blood, breath, or urine chemically tested for the purpose of determining the presence of alcohol, Minn. Stat. § 169A.51, subd. 1(a) (2008), the statutory phrase "implied consent" is a misnomer in this context. A warrantless chemical test is constitutionally reasonable if the police have probable cause to believe that the person was driving, operating, or in physical control of a motor vehicle while chemically impaired because of the exigent circumstances created by "[t]he rapid, natural dissipation of alcohol in the blood." *State v. Shriner*, 751 N.W.2d 538, 549–50 (Minn.2008); *accord Netland*, 762 N.W.2d at 212–13. When the requirements of probable cause and exigent circumstances are met, *consent* is not constitutionally necessary to administer a warrantless chemical test, nor is *consent* the basis for the search. Indeed, the implied consent advisory required by Minnesota law, which was presented to Wiseman, does not seek a person's consent to submit to a warrantless chemical test; rather, it advises a person that Minnesota law requires the person to take a chemical test and that refusal to submit to a chemical test is a crime.[2] Minn.Stat. § 169A.51, subd. 2 (2008). Because neither a warrant nor consent are necessary to administer a constitutionally reasonable chemical test supported by probable cause, our analysis turns on whether there exists a fundamental right to passively or nonviolently refuse to submit to a constitutionally reasonable police search.

Refusal to cooperate with a warrantless but constitutionally reasonable police request for evidence, even when accomplished passively or nonviolently, is subject to criminal penalties or otherwise adverse consequences in a variety of contexts. For example, states may criminally punish an individual for passively or nonviolently refusing to provide his or her identity to the police during a valid *Terry* stop, without abridging the protections of the Fourth Amendment. *Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 188–89, 124 S.Ct. 2451, 2459, 159 L.Ed.2d 292 (2004) (observing that "[t]he threat of criminal sanction helps ensure that the request for identity does not become a legal nullity"); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The state also may compel an individual to stand in a lineup or wear particular clothing, or to produce incriminating nontestimonial physical evidence such as a blood sample, a handwriting exemplar, or a voice exemplar, all of which require the individual's cooperation. *Doe v. United States*, 487 U.S. 201, 210, 108 S.Ct. 2341, 2347, 101 L.Ed.2d 184 (1988). If an individual refuses to cooperate with such requests, it is not fundamentally unfair or a violation of due process to use the individual's refusal as evidence of guilt. *See South Dakota v. Neville*, 459 U.S. 553, 566, 103 S.Ct. 916, 924, 74 L.Ed.2d 748 (1983) (holding that state's use of defendant's refusal to submit to chemical test as evidence of guilt "comported with the fundamental fairness required by due process"); *United States v. Brown*, 156 F.3d 813, 815 (8th Cir.1998) (holding that jury may infer guilt from defendant's refusal to

ed.1992). This meaning does not encompass consent or agreement.

**2.** Although Wiseman characterizes his refusal to submit to a chemical test as lacking "obstructionist conduct," the act of refusing impedes an officer's efforts to obtain evidence

that the officer has the legal authority to obtain. Moreover, we are mindful that Minnesota law criminalizes chemical-test *refusal*, which may be accomplished passively, not *obstruction*, which may implicitly require affirmative conduct. Minn.Stat. § 169A.20, subd. 2.

provide handwriting exemplar). Moreover, the Minnesota Supreme Court has affirmed the constitutionality of Minnesota's statute criminalizing the nonviolent obstruction of legal process when challenged as overbroad or vague. *State v. Krawsky,* 426 N.W.2d 875, 877 (Minn.1988) (holding that obstruction-of-legal-process statute may be used to punish "any ... words that by themselves have the effect of physically obstructing or interfering with a police officer" in the performance of the officer's duties).

Wiseman cites several Minnesota cases for the proposition that he has a fundamental right, implicit in the protections of the Fourth Amendment, to passively or nonviolently refuse to submit to a warrantless police search by saying "no." For example, in *State v. Larson,* 788 N.W.2d 25, 32–33 (Minn.2010), the state improperly commented to the jury regarding the defendant's refusal to consent to providing a warrantless DNA sample. And in *State v. George,* 557 N.W.2d 575, 581 (Minn. 1997), and *State v. Dezso,* 512 N.W.2d 877, 880–81 (Minn.1994), the Minnesota Supreme Court held that the defendants' coerced or extracted consent to a warrantless police search was invalid. But in a singularly important respect, each of these cases is distinguishable from the circumstances here. In each of these cases, unlike here, the police lacked the authority to conduct a search absent the defendant's consent—the police possessed neither a warrant nor an exception to the warrant requirement. Contrary to Wiseman's argument, these cases do not recognize a fundamental right to say "no" or to refuse to submit to *any* police search. Rather, saying "no" invoked the "liberty interest, constitutionally protected, against unreasonable prying into [an individual's] personal affairs." *George,* 557 N.W.2d at 579 (quoting *Dezso,* 512 N.W.2d at 880). That liberty interest is not implicated here. A warrantless chemical test based on proba-

ble cause to believe a suspect was driving while impaired does not constitute "unreasonable prying" because it falls within the exigent-circumstances exception to the warrant requirement. *Netland,* 762 N.W.2d at 212–13.

Accordingly, Wiseman has not demonstrated the existence of a fundamental right, recognized under either federal or Minnesota law, to passively or nonviolently refuse to submit to a constitutionally reasonable police search. Indeed, neither United States nor Minnesota constitutional law has ever recognized the existence of a fundamental right to engage in such conduct, and we decline to do so here. *See Glucksberg,* 521 U.S. at 720, 117 S.Ct. at 2267–68 (observing that courts are reluctant to expand substantive-due-process protection because doing so places matters outside the scope of public debate and legislative action).

■ Because Wiseman has not established that Minnesota's chemical-test-refusal statute implicates a fundamental right, substantive due process requires only that the statute is not arbitrary or capricious, or that it reflects a reasonable means to a permissible state objective. *Behl,* 564 N.W.2d at 567. Impaired drivers pose a severe threat to the health and safety of motorists in Minnesota, and the state has a compelling interest in highway safety that justifies efforts to keep impaired drivers off the road. *Bendorf v. Comm'r of Pub. Safety,* 727 N.W.2d 410, 416–17 (Minn.2007). To that end, the state has a legitimate, time-sensitive interest in obtaining a blood, breath, or urine sample for chemical testing from an individual when the police have probable cause to believe that the individual committed criminal vehicular operation. *Netland,* 762 N.W.2d at 212–13; *Shriner,* 751 N.W.2d at 549–50. Moreover, the state has an interest in preventing both violent and nonviol-

ent obstruction of a criminal investigation. *See* Minn.Stat. § 609.50 (2010) (criminalizing violent and nonviolent obstruction of legal process); *Krawsky,* 426 N.W.2d at 877–78 (holding that section 609.50 may punish verbal or nonverbal conduct that obstructs or interferes with police officer's duties). We, therefore, conclude that Minnesota's chemical-test-refusal statute reflects permissible state objectives.

The state must effectuate these objectives by reasonable means. *Behl,* 564 N.W.2d at 567. It is the legislature's exclusive province to define by statute what acts constitute criminal conduct and to establish appropriate punishment for their commission. *Id.* at 568. Here, the legislature has criminalized a suspect's refusal to comply with a police officer's lawful search. Otherwise, test refusal, even when accomplished passively or nonviolently, would foreseeably place a police officer in the unfortunate and dangerous situation of having to physically restrain a potentially intoxicated suspect in order to timely obtain a sample against the suspect's will. Indeed, in his arguments to this court, Wiseman advocates for the police to extract a sample forcibly for chemical testing rather than to seek compliance by threatening a criminal sanction for test refusal. Applying that argument here, when Wiseman refused to cooperate with Officer Stevens's constitutionally reasonable search, the next possible sequence of events may have resulted in injury to a police officer, medical personnel, or Wiseman in an attempt to forcibly extract Wiseman's blood or urine. The threat of criminal sanctions for chemical-test refusal, particularly when accompanied by the express warning contained in the implied consent advisory, helps ensure that the police may safely obtain a test sample from an unwilling and potentially intoxicated suspect in circumstances demanding cooperation and expedience. Accordingly, the legislature's imposition of criminal penalties for refusing to supply a blood, breath, or urine sample for chemical testing constitutes a reasonable means to achieve a permissible state objective and does not violate Wiseman's right to substantive due process.

## DECISION

Minnesota law criminalizes a suspect's refusal to "submit to a chemical test" of blood, breath, or urine, not the refusal to consent to a chemical test. *See* Minn.Stat. § 169A.20, subd. 2. Appellant has not established the existence of a fundamental right, protected under the Due Process Clause of the United States Constitution or the Minnesota Constitution, to passively or nonviolently refuse to submit to a constitutionally reasonable police search. The imposition of criminal penalties for refusing to submit to a constitutionally reasonable police search, namely, a chemical test of blood, breath, or urine, supported by probable cause, is a reasonable means to facilitate a permissible state objective. Therefore, Minnesota's chemical-test-refusal statute, Minn.Stat. § 169A.20, subd. 2, does not violate an individual's substantive-due-process rights.

**Affirmed.**