**STATE of Minnesota, Appellant,**

v.

**William Robert BERNARD, Jr., Respondent.**

**No. A13–1245.**

Court of Appeals of Minnesota.

March 17, 2014.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Tori K. Stewart, Assistant County Attorney, Karen L. Wangler, Assistant County Attorney, Hastings, MN, for respondent.

Steven T. Grimshaw, Minneapolis, MN,; and Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, MN, for appellant.

Considered and decided by SMITH, Presiding Judge; ROSS, Judge; and RODENBERG, Judge.

## OPINION

ROSS, Judge.

William Bernard was arrested for suspected drunk driving and refused to take a breath test requested by police under the state's implied consent law. The state charged Bernard with the crime of test refusal. The district court dismissed the charge, reasoning that the Constitution prohibits the state from criminalizing refusal to submit to a search that could not be compelled without a warrant. We reverse because the state may prosecute a suspected drunk driver for test refusal under the implied consent law when the requesting officer had other lawful means to obtain a nonconsensual test.

## FACTS

South St. Paul police received a call that three drunk men had just got their pickup truck stuck attempting to remove a boat from the Mississippi River at a public boat ramp. Police arrived and witnesses pointed out a stumbling, underwear-clad man as the truck's driver. That man was William Bernard. The officers noticed one axle of Bernard's truck hanging over the edge of the ramp's pavement, indicating it had just been driven, but neither Bernard nor his two companions—all smelling strongly of alcoholic beverages—would admit to being the driver.

Because two witnesses had identified Bernard as the driver and the caller had reported that the driver, like Bernard, was wearing only underwear, the officers focused on him. Complementing the smell of alcoholic beverages on Bernard's breath, his eyes were bloodshot and watery. Bernard admitted that he had been drinking but denied driving the truck. He was holding the keys to the truck. He refused to take field sobriety tests, and the officers took him into custody. An officer drove him to the South St. Paul police station, read him the Implied Consent Advisory, and gave him the opportunity to contact an attorney. Bernard did not call an attorney. When the officer asked him to submit to a breath test, he refused. The state charged Bernard with two counts of DWI–

Test Refusal under Minnesota Statutes section 169A.20, subdivision 2 (2012).

Bernard moved the district court to dismiss the charges. He argued that Minnesota's test-refusal statute is unconstitutional under the doctrine of unconstitutional conditions and, alternatively, that the Supreme Court's decision in *Missouri v. McNeely,* —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013), precluded the state from criminalizing refusal to submit to a breath test. The district court declined to hold the test-refusal statute unconstitutional on its face, but, reasoning from constitutional principles, it concluded that Bernard's conduct could not be subject to criminal charges. It relied primarily on *McNeely* and *State v. Wiseman,* 816 N.W.2d 689 (Minn.App.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 1585, 185 L.Ed.2d 578 (2013). It read *Wiseman* as legitimizing only the "criminaliz[ation of] a suspect's refusal to comply with a police officer's *lawful* search." 816 N.W.2d at 696 (emphasis added). It read *McNeely* as foreclosing the idea that the natural dissipation of alcohol in the blood alone constitutes exigent circumstances to justify a warrantless search of a suspected drunk driver, requiring that any warrantless search be justified under the totality of the circumstances. 133 S.Ct. at 1563. The district court reasoned that the state could criminalize Bernard's test refusal only if it could show that the totality of the circumstances justified a warrantless breath test. It then considered the circumstances, using the factor-based analysis from *Dorman v. United States,* 435 F.2d 385 (D.C.Cir. 1970), and it concluded that the state had not shown an exigency sufficient to justify a warrantless search. It dismissed the charges.

The state appealed, and we heard oral arguments. We then stayed the appeal pending the supreme court's decision in *State v. Brooks,* 838 N.W.2d 563 (Minn. 2013). We dissolved the stay after *Brooks* was decided and now address the state's appeal in light of *Brooks.*

## ISSUE

Did the district court err by concluding that the state cannot criminalize Bernard's refusal to submit to a warrantless breath test because there was no constitutionally permissible basis to conduct a warrantless search?

## ANALYSIS

■ When the state appeals a pretrial order dismissing criminal charges, it must show clearly and unequivocally "that the district court erred and that the error, unless reversed, will have a critical impact on the outcome of the prosecution." *State v. Gradishar,* 765 N.W.2d 901, 902 (Minn. App.2009) (quotation omitted). We can exercise jurisdiction and hear the appeal only if the state satisfies the critical-impact test. *State v. Baxter,* 686 N.W.2d 846, 850 (Minn.App.2004). Our jurisdiction is not in doubt here. A district court order dismissing criminal charges has a critical impact on the prosecution. *Gradishar,* 765 N.W.2d at 902. The district court order effectively ended Bernard's prosecution, so the threshold jurisdictional requirement is met.

■ The state argues that the district court erroneously dismissed the charges. The challenge raises a question of law, so we may review the undisputed facts independently and decide whether the district court erred by dismissing the charges. *State v. Harris,* 590 N.W.2d 90, 98 (Minn. 1999). The district court's decision hinged on whether police could search Bernard. The fulcrum is reasonableness. The federal and state constitutions protect citizens against only unreasonable searches and seizures. U.S. Const. amend. IV; Minn.

Const. art. 1, § 10. A compelled breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n,* 489 U.S. 602, 616–17, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989).

■ Bernard's two counts of felony test refusal consist of "refus[ing] to submit to a chemical test of the person's blood, breath, or urine." Minn.Stat. § 169A.20, subd. 2 (2012). The statute criminalizes refusal to submit to testing authorized under the implied consent law, which provides that anyone who drives a vehicle and is suspected of being under the influence of alcohol or other drugs has impliedly consented to a blood, breath, or urine test for alcohol. Minn.Stat. § 169A.51, subd. 1(a) (2012). We have interpreted section 169A.20, subdivision 2 as criminalizing refusals to submit to searches that are constitutionally reasonable. *See State v. Wiseman,* 816 N.W.2d 689, 694–95 (Minn.App.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 1585, 185 L.Ed.2d 578 (2013). We reasoned that the state may therefore criminalize a person's refusal to submit to a breath test when it obtains a search warrant or demonstrates that an exception to the warrant requirement applies. *Id.* Consent is one established exception, *State v. Othoudt,* 482 N.W.2d 218, 222 (Minn.1992), and search incident to arrest is another, *Arizona v. Gant,* 556 U.S. 332, 338, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009). The common exception in chemical testing has been exigent circumstances. *See, e.g., State v. Netland,* 762 N.W.2d 202 (Minn.2009); *Wiseman,* 816 N.W.2d 689. This exception authorizes a warrantless search if police have probable cause that the suspect committed a crime and exigent circumstances necessitate an immediate search. *Kentucky v. King,* —— U.S. ——, 131 S.Ct. 1849, 1856, 179 L.Ed.2d 865 (2011).

Our state supreme court held in *State v. Shriner* that a warrantless blood draw was constitutionally reasonable because the natural dissipation of alcohol in the blood constituted a per se exigent circumstance. 751 N.W.2d 538, 549–50 (Minn.2008), *abrogated by McNeely,* 133 S.Ct. 1552. It affirmed this approach in *State v. Netland,* 762 N.W.2d at 214. We later observed that the term "implied consent" is a misnomer because the statute criminalizes "refusal to *submit* to a chemical test,' not . . . refusal to *consent* to a chemical test." *Wiseman,* 816 N.W.2d at 693 (first emphasis added) (quoting Minn.Stat. § 169A.20, subd. 2 (2008)). Following *Shriner,* we explained that the natural dissipation of alcohol in the blood justified warrantless testing of suspected drunk drivers. *Id.* at 694. Because these searches were constitutionally reasonable, police did not need consent to conduct them and we saw no constitutional right to refuse to submit. *Id.* at 695. We therefore affirmed the criminal penalties as constitutional. *Id.* at 696.

Bernard takes the position that the Supreme Court relandscaped in *McNeely* by holding that the dissipation of alcohol in the bloodstream did *not* constitute a per se exigent circumstance permitting police to draw blood for testing against the will of a suspected drunk driver. *See* 133 S.Ct. at 1567–68. Under *McNeely,* police who draw blood against the driver's will must demonstrate that, based on the totality of the circumstances, a warrantless search is justified. *Id.* at 1568. Under Bernard's theory, *McNeely,* as applied through *Wiseman,* bars criminal charges for test refusal because it eliminates what had been a per se exigent circumstance that justifies both executing a search and criminalizing a refusal.

The state supreme court recently considered *McNeely*'s impact on our implied consent law in *State v. Brooks,* 838 N.W.2d 563, 567 (Minn.2013), *pet. for cert. filed* (U.S. Feb. 24, 2014). But *Brooks* does not

answer our question because, unlike here, in that case the defendant ultimately submitted to testing and the court held that, under the totality of the circumstances, he freely and voluntarily consented to the chemical tests. *Id.* at 572. Because Bernard never submitted to a test, *Brooks*'s holding is inapposite.

We focus on *Wiseman*, which we do not read as narrowly as Bernard implicitly asks us to. As we explained in *Wiseman*, under the implied consent statute "the legislature has criminalized a suspect's refusal to comply with a police officer's lawful search." 816 N.W.2d at 696. In that case, because we assumed the existence of exigent circumstances that would have justified the officer to conduct a search even without the suspected drunk driver's consent, we held that he "has not demonstrated the existence of a fundamental right, recognized under either federal or Minnesota law, to passively or nonviolently refuse to submit to a constitutionally reasonable police search." *Id.* at 695. We therefore saw no violation of Wiseman's substantive due process rights by the state's authority to prosecute Wiseman for refusing to submit to a breath test. *Id.* at 696.

Bernard would have us hold that because exigent circumstances did not exist when the officer asked him to submit to a chemical test (so that the Fourth Amendment would have precluded the officer from forcing a hypothetical warrantless test against Bernard's will), prosecuting him for refusing to consent to the test violates his due process rights. But we think the broader proposition that we summarized in *Wiseman* also applies here. We explained there that "[t]he imposition of criminal penalties for refusing to submit to a constitutionally reasonable police search, namely, a chemical test of ... breath ... supported by probable cause, is

a reasonable means to facilitate a permissible state objective." *Id.* We do not here consider the constitutionality of a hypothetical warrantless search in the absence of consent as we did in *Wiseman* when we rejected Wiseman's constitutional argument. Assuming under these facts that, after *McNeely*, the officer would not have been justified to conduct a warrantless search (a proposition the state disputes), we can consider whether the officer's request was appropriate on other grounds. We hold that it was.

■ Because the officer indisputably had probable cause to believe that Bernard was driving while impaired (he was identified by witnesses as the driver, he was holding the truck keys, and his wardrobe, instability, and odor indicated that he was intoxicated), the officer also indisputably had the option to obtain a test of Bernard's blood by search warrant. *See* U.S. Const. amend. IV. (requiring probable cause for search warrants); Minn.Stat. § 626.11(a) (2012) ("If the judge is satisfied ... that there is probable cause ... the judge must issue a signed search warrant...."); Minn.Stat. § 169A.20, subd. 1 ("It is a crime for any person to drive ... any motor vehicle ... when ... the person is under the influence of alcohol."); *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (holding that probable cause to search exists when, under the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place"). So at the time the officer asked Bernard whether he would submit to a breath test, the officer could have just as lawfully asked an independent jurist to issue a search warrant to test Bernard's blood. Like the hypothetical warrantless test available to the officer in *Wiseman*, a hypothetical warrant-sponsored test is also a "constitutionally reasonable police

search." In other words, the officer had a lawful option to require Bernard to submit to a chemical test, based on a search warrant, and he instead gave Bernard the choice to voluntarily submit to warrantless testing. That the officer chose one approach (the authority to make the request under the implied consent statute) rather than another (the authority to obtain a warrant under the impaired driving statute) does not make penalizing Bernard's decision unconstitutional because the consequent testing under either approach would have been constitutionally reasonable. We recognize that the officer did not actually possess a search warrant at the time of his request, but the constitutional and statutory grounds for a warrant plainly existed before the request. Just as we deemed significant the fact that the officer in *Wiseman* could have lawfully taken a nonconsensual approach theoretically available to him, we deem it significant that the officer here also could have lawfully taken a nonconsensual approach. The officers in both cases instead asked the suspected drunk driver to voluntarily submit to testing. We recognize that the alternative to obtaining a chemical test here, like the *Wiseman* hypothetical alternative, is purely theoretical, because the implied consent law admonishes police that "a test must not be given" if the driver refuses. Minn.Stat. § 169A.52, subd. 1 (2012). But the question in both settings is whether the requesting officer had a *constitutionally* viable alternative. We hold that Bernard's prosecution did not implicate any fundamental due process rights, just as we held as to Wiseman's prosecution.

Although it does not drive our analysis, we add that this holding affords a significant practical advantage over the holding that Bernard urges. Prohibiting the state from charging a driver for test refusal on the notion that the state's authority depends on whether, in each particular case, exigent circumstances *would have* justified the requesting officer to conduct a warrantless search at the time she made the request adds prosecutorial and judicial complications without providing any constitutionally significant benefit to defendants. The new constitutional rule would put the myriad test-refusal factual scenarios on a spectrum depending on various circumstances surrounding the test request, especially after *McNeely*. On one end, exigent circumstances would have clearly justified a hypothetical warrantless search at the time of the refused test request, so the refusal to test could certainly be prosecuted. On the other end, exigent circumstances would clearly not have justified a warrantless search, so the refusal could certainly *not* be prosecuted. And in the vast majority of cases in the middle, one could reasonably argue either way as to whether the temporal and logistical and practical circumstances supported a hypothetical warrantless search, so another round of collateral litigation would become necessary. We would probably call it a *Bernard* hearing. Anticipating the hearing, arresting officers would have the incentive to delay asking for the chemical test until near the end of the two-hour statutory testing period, *see* Minn.Stat. § 169A.20, subd. 1(5), making a finding of exigency more likely. Some offenders could be prosecuted and others not, based on details that differ in constitutionally insignificant ways. (For example, an officer has a mechanical problem on the way to jail with her intoxicated arrestee while another officer does not; the delayed officer can make an argument that exigent circumstances existed at the time of the test refusal while the other cannot.)

The state offers two alternative theories to contend that the officer could have conducted a *warrantless* chemical test here.

It maintains that the search-incident-to-arrest exception applies and that breath tests garner less Fourth Amendment protection than blood tests. Although not necessary to our decision, we address both briefly. We observe that, despite some apparent confusion in the caselaw, the Supreme Court in *Schmerber v. California* initially analyzed forced blood draws as searches incident to arrest. 384 U.S. 757, 768–71, 86 S.Ct. 1826, 1834–36, 16 L.Ed.2d 908 (1966). This analytical framework facially seems to support the state's argument, but we add that the *Schmerber* Court, like the *McNeely* Court, saw exigency as a key component of a constitutionally appropriate warrantless blood test. *Compare id.* at 769–72, 86 S.Ct. at 1835–36 (holding that passage of time created exigencies that superseded suspect's privacy interest in avoiding a warrantless blood draw), *with McNeely*, 133 S.Ct. at 1568 (holding that evanescent nature of alcohol in the body does not, by itself, establish a per se exigency justifying warrantless blood draws). So treating the hypothetical warrantless test as a search incident to arrest cannot be sufficient without also satisfying the exigency requirement. Regarding the notion that breath tests are less protected than blood tests, the *Schmerber* Court referred to a blood draw as being only moderately intrusive ("commonplace in these days of periodic physical examinations," ... "the quantity of blood extracted is minimal," ... "for most people the procedure involves virtually no risk, trauma, or pain"), 384 U.S. at 771, 86 S.Ct. at 1836, while the *McNeely* Court described a blood draw in more intrusive terms ("a compelled physical intrusion beneath McNeely's skin and into his veins," ... "an invasion of bodily integrity"), 133 S.Ct. at 1558. But the Supreme Court in both cases treated the existence or lack of exigent circumstances as the critical factor bearing on whether a compelled warrantless blood test could survive constitutional scrutiny; the degree of intrusiveness clearly was not the dispositive issue. The state's arguments on these points are not compelling, but in light of our holding, we do not decide them.

We similarly do not reach the state's argument that the district court applied the wrong test when it relied on the factors announced in *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir. 1970), to analyze the totality of the circumstances, or Bernard's argument that the implied consent law is unconstitutional because it conditions the exercise of the privilege of driving on the driver surrendering his constitutional right to be free of unreasonable searches and seizures.

## DECISION

The state is not constitutionally precluded from criminalizing a suspected drunk driver's refusal to submit to a chemical test under circumstances in which the requesting officer had grounds to have obtained a constitutionally reasonable nonconsensual chemical test by securing and executing a warrant requiring the driver to submit to testing.

**Reversed and remanded.**