*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0572**

State of Minnesota,
Appellant,

vs.

Brandon Joseph Poitra,
Respondent.

**Filed August 11, 2014
Reversed and remanded
Larkin, Judge**

Clay County District Court
File No. 14-CR-14-12

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brian J. Melton, Clay County Attorney, Heidi M.F. Davies, Assistant County Attorney, Moorhead, Minnesota (for appellant)

Brian P. Toay, Wold Johnson, P.C., Fargo, North Dakota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

# UNPUBLISHED OPINION

**LARKIN**, Judge

In this pretrial prosecution appeal, appellant challenges the district court's dismissal of its charge against respondent under Minn. Stat. § 169A.20, subd. 2 (2012)

(driving while impaired, chemical test refusal). Because respondent has failed to demonstrate, beyond a reasonable doubt, that the test-refusal statute violates a constitutional provision, we reverse and remand.

## FACTS

A Moorhead police officer arrested respondent Brandon Joseph Poitra for driving while impaired (DWI). The officer read Poitra Minnesota's implied-consent advisory. Poitra indicated that she understood the advisory and refused to submit to chemical testing.[1] Appellant State of Minnesota charged Poitra with refusal to submit to a chemical test and operating a motor vehicle under the influence of alcohol.

Poitra moved the district court to "exclude all products of the unconstitutional and warrantless attempt to procure bodily fluids from [her]." At the omnibus hearing, the following exchange occurred:

> DEFENSE: The issue is the test, Your Honor. And . . . we're quite willing to proceed with the police reports, and draft a brief. . . . I want to read [a particular case] before I actually provide what is sort of a canned brief at this point. It may well raise some additional issues.
> COURT: Okay.
> THE STATE: So as I understand it, it's a challenge to the constitutionality of 169A.20, subdivision 2 [(the test-refusal statute)]?
> DEFENSE: That's correct.

Later, Poitra submitted a brief in district court, arguing that "there were no exigent circumstances present that allowed the warrantless seizure of bodily fluids" and that she "did not consent to the search." She therefore asserted that "[t]he [test-refusal] statute

---

[1] We use the same gender designation that the district court used.

[(Minn. Stat. § 169.20, subd. 2] is unconstitutional herein as it applies to this defendant." She argued that "[t]he state had the duty of securing a warrant, or proving exigent circumstances" and "[b]ecause the [s]tate did not procure a warrant for the search of [her] breath, urine, or blood, or prove exigent circumstances, [the test-refusal charge] must be dismissed."

The district court granted Poitra's request for dismissal. It reasoned that the officer "did not have a warrant or an exception that would have allowed a warrantless search. Therefore the search would have been unreasonable. It follows that [Poitra] cannot be convicted of the crime of test refusal." However, the district court "decline[d] to find the test refusal statute unconstitutional." The district court relied on *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727 (1967) and *Frost Trucking Co. v. R.R. Comm'n of Cal.*, 271 U.S. 583, 46 S. Ct. 605 (1926), even though Poitra did not cite either case as a basis for relief. The state appeals.

## DECISION

### I.

The state may appeal from "any pretrial order" so long as "the district court's alleged error, unless reversed, will have a critical impact on the outcome of the trial." Minn. R. Crim. P. 28.04, subds. 1(1), 2(1). "[A] pretrial order will only be reversed if the [s]tate demonstrates clearly and unequivocally that the [district] court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Underdahl*, 767 N.W.2d 677, 681 (Minn. 2009) (quotation omitted). "The critical impact requirement has evolved into a threshold issue, so that in the absence

3

of critical impact we will not review a pretrial order." *Id*. (quotations omitted). Because the district court dismissed Poitra's test-refusal charge, the critical impact standard is satisfied. *See State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (stating that critical impact is present when suppression of evidence leads to the dismissal of charges); *see also State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001) (concluding that "[d]ismissal of a complaint satisfies the critical impact requirement" in a case where only one count of a multi-count complaint was dismissed), *review dismissed* (Minn. June 22, 2001).

## II.

The constitutionality of a statute presents a question of law, which appellate courts review de novo. *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011). "[An appellate court] presume[s] that Minnesota statutes are constitutional and will strike down a statute as unconstitutional only if absolutely necessary." *Id*. "To prevail, a party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision." *Id*.

In this case, the district court "decline[d] to find the test refusal statute unconstitutional." It nonetheless dismissed the test-refusal charge because "a [d]efendant cannot be constitutionally convicted for refusing an unreasonable search." Even though the district court did not expressly rule that the test-refusal statute is unconstitutional, that is the effect of its ruling. We therefore apply the principles in the preceding paragraph when reviewing the dismissal.

4

**III.**

Following the district court's lead, Poitra relies on *Camara* as support for the dismissal of her test-refusal charge.[2] She argues that under *Camara*, "[p]assive refusal to consent to a warrantless search is privileged conduct which cannot be considered a crime."

In *Camara*, Roland Camara had been criminally charged with "refusing to permit a lawful inspection" after he repeatedly refused to let inspectors from the Division of Housing Inspection into his apartment to make a routine annual inspection, because the inspectors did not have a search warrant. *Camara*, 387 U.S. at 526-27, 87 S. Ct. at 1729-30. The inspectors were acting under the authority of section 503 of the city housing code, which provided that "[a]uthorized employees . . . shall, upon presentation of proper credentials, have the right to enter, at reasonable times, any building, structure, or premises in the [c]ity to perform any duty imposed upon them by the Municipal Code." *Id*. at 526, 87 S. Ct. at 1729. Camara argued that section 503 was "contrary to the Fourth and Fourteenth Amendments in that it authorize[d] municipal officials to enter a private dwelling without a search warrant and without probable cause to believe that a violation of the [h]ousing [c]ode exist[ed] therein."[3] *Id*. at 527, 87 S. Ct. at 1730. Camara

---

[2] Poitra does not rely on *Frost*, 271 U.S. at 593-94, 46 S. Ct. at 607 (discussing the unconstitutional-conditions doctrine).

[3] Unlike the regulation in *Camara*, Minnesota's implied-consent law does not authorize chemical testing unless "an officer has probable cause to believe the person [to be tested] was driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired)." Minn. Stat. § 169A.51, subd. 1(b) (2012); *see also* Minn. Stat. § 169A.51, subd. 1(c) (2012) ("The test may also be required of a person

contended that he could not be prosecuted for refusing to allow an inspection unconstitutionally authorized by section 503. *Id*.

The Supreme Court explained that it granted review "to re-examine whether administrative inspection programs, as presently authorized and conducted, violate Fourth Amendment rights." *Id*. at 525, 87 S. Ct. at 1729. The Supreme Court held

> that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in *Frank v. Maryland* and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections.

*Id*. at 534, 87 S. Ct. at 1733.

After concluding that code-enforcement inspection programs must be circumscribed by a warrant procedure, the Supreme Court determined the standard that should govern the issuance of such warrants. *Id*. at 534-38, 87 S. Ct. at 1733-36. Lastly, the Court concluded that Camara "had a constitutional right to insist that the inspectors obtain a warrant to search and that [he could] not constitutionally be convicted for refusing to consent to the inspection." *Id*. at 540, 87 S. Ct. at 1737. However, unlike its approach to the first two issues, the Supreme Court offered no analysis to explain its conclusion that the criminal charge was impermissible. *See id*. The Supreme Court's conclusion regarding the criminal charge appears to be based on the Fourth Amendment.

---

when an officer has probable cause to believe the person was driving, operating, or in physical control of a commercial motor vehicle with the presence of any alcohol.").

Poitra argues that "[t]he result of this case should be the same as *Camara*, and the [t]est [r]efusal charge against [him] was rightfully dismissed." Poitra's argument fails because the Supreme Court's conclusion regarding Camara's criminal charge was based on its underlying determination that the attempted search would have violated the Fourth Amendment. The same cannot be said of the attempted search under Minnesota's implied-consent law in this case.

This court recently considered whether warrantless chemical testing under Minnesota's implied-consent law violates the Fourth Amendment's reasonableness standard. *Stevens v. Comm'r of Pub. Safety*, ___ N.W.2d ___, ___, 2014 WL 3396522, at *6 (Minn. App. July 14, 2014). We concluded that

> the state's strong interest in ensuring the safety of its roads and highways outweighs a driver's diminished privacy interests in avoiding a search following an arrest for DWI. Thus, if we assume that the implied-consent statute authorizes a search of a driver's blood, breath, or urine, such a search would not violate the Fourth Amendment.

*Id.* at *10. We reasoned, in part, that "Minnesota's implied-consent statute contains even more safeguards than the suspicionless-search procedures that were upheld in [*Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 109 S. Ct. 1402 (1989)] and, thus, is at least as reasonable, if not more reasonable, for Fourth Amendment purposes than the procedures in *Skinner*." *Id.* at *9. Because a search under Minnesota's implied-consent law would not violate the Fourth Amendment, *Camara* is not apposite.

Moreover, even if the *Camara* rule were applicable, to the extent that the Supreme Court concluded that the criminal charge in *Camara* was impermissible under the Fourth

7

Amendment, we question the continued validity of that approach. In *Cnty. of Sacramento v. Lewis*, the United States Supreme Court considered whether a claim under 42 U.S.C. § 1983, which stemmed from a death that occurred during a high-speed police chase, was properly analyzed as a substantive-due-process claim or a Fourth Amendment claim. 523 U.S. 833, 842-44, 118 S. Ct. 1708, 1714-15 (1998); *see Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870 (1989) (explaining that section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred" (quotation omitted)).

The Supreme Court stated that "where a particular Amendment provides an explicit textual source of constitutional protection against *a particular sort of government behavior*, that Amendment, [and] not the more generalized notion of substantive due process," guides the analysis. *Lewis*, 523 U.S. at 842, 118 S. Ct. at 1714 (emphasis added) (quotation omitted). The Supreme Court explained that "[s]ubstantive due process analysis is . . . inappropriate . . . only if respondent's claim is 'covered by' the Fourth Amendment. It is not. The Fourth Amendment covers only 'searches and seizures,' neither of which took place here." *Id.* at 843, 118 S. Ct. at 1715. The Supreme Court reasoned that "a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *Id.* at 844, 118 S. Ct. at 1715. The Supreme Court therefore concluded that because there was no seizure, the claim was properly analyzed as a due-process claim. *Id.* at 843-44, 118 S. Ct. at 1715.

Although *Lewis* involved a claim under 42 U.S.C. § 1983, this court utilized the *Lewis* approach when considering a constitutional challenge to the test-refusal statute in

8

*State v. Wiseman*. 816 N.W.2d 689, 693 (Minn. App. 2012), *cert. denied*, 133 S. Ct. 1585 (2013), *and abrogated on other grounds by Missouri v. McNeely*, 133 S. Ct. 1552 (2013). We cited *Lewis* stating, "when there exists 'an explicit textual source of constitutional protection' against a particular government action, we must analyze the challenged action under the specific constitutional provision rather than as a possible violation of substantive-due-process rights." *Id.* (citing *Lewis*, 523 U.S. at 842, 118 S. Ct. at 1714). This court concluded that Wiseman's constitutional challenge did not implicate a specific constitutional provision, that is, the Fourth or Fifth Amendment, and analyzed the challenge as a substantive-due-process claim. *Id.*

Based on the approaches in *Lewis* and *Wiseman*, we hold that Minnesota's test-refusal statute is not unconstitutional under the Fourth Amendment for the simple reason that the statute does not authorize a search.[4] Instead, it criminalizes an individual's refusal to submit to a search. *See* Minn. Stat. § 169A.20, subd. 2. ("It is a crime for any person to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)."). Thus, the "particular sort of government behavior" at issue here is the legislature's criminalization of a refusal to submit to a search. *See Lewis*, 523 U.S.

---

[4] Under Minnesota's implied-consent law, if a person refuses to permit a test, generally, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2012). But there are two exceptional circumstances in which the implied-consent statute authorizes a warrantless search without the driver's express consent: when there is probable cause to believe that the person has violated the criminal vehicular homicide and injury laws and when the person is unconscious or otherwise incapable of consenting to chemical testing or refusing to consent. Minn. Stat. §§ 169A.52, subd. 1, .51, subd. 6 (2012). Neither circumstance is present here.

at 842, 118 S. Ct. at 1714. It is not the execution of a search; there was no search. *See Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (stating a search occurs within the meaning of the Fourth Amendment "[w]hen the Government obtains information by physically intruding on persons, houses, papers, or effects" (quotation omitted)).

Because there was no search, Poitra's constitutional challenge to the refusal statute is not "covered by" the Fourth Amendment. *See Lewis*, 523 U.S. at 843-44, 118 S. Ct. at 1715. Instead, Poitra's challenge sounds in substantive due process. *See Wiseman*, 816 N.W.2d at 693. "[S]ubstantive due process protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). And it limits what the government may do in its legislative capacity. *Lewis*, 523 U.S. at 845-46, 118 S. Ct. at 1716. The conclusion section of Poitra's brief hints at the substantive-due-process framework stating, "[b]ecause [Poitra] has a constitutionally guaranteed right to be free from unreasonable searches, the [s]tate cannot criminalize [her] refusal to submit to this warrantless unreasonable search." Yet, Poitra does not offer substantive-due-process analysis or argument.

In sum, Poitra's reliance on *Camara* is unavailing and Poitra has not otherwise met her burden to demonstrate, beyond a reasonable doubt, that the test-refusal statute violates a constitutional provision. *See State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990) (stating that "the challenger bears the very heavy burden of demonstrating beyond

10

a reasonable doubt that the statute is unconstitutional"). We therefore reverse the dismissal of Poitra's test-refusal charge and remand for further proceedings.

**Reversed and remanded.**