*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0931**

State of Minnesota,
Respondent,

vs.

Todd Eugene Trahan,
Appellant.

**Filed September 29, 2014
Affirmed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-CR-12-8574

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Halbrooks, Judge; and Ross, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

In this combined direct and postconviction appeal, appellant challenges his conviction of refusal to submit to a test required under the implied-consent law, arguing

that the factual basis for his guilty plea is invalid because it did not support the offense of test refusal and that criminalizing test refusal is unconstitutional under *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). We affirm.

## FACTS

Just after midnight on October 24, 2012, a Ramsey County sheriff's deputy stopped appellant Todd Eugene Trahan based on his erratic driving and speed, which the deputy clocked at 52 m.p.h. in a 40 m.p.h. zone. When the deputy made contact with Trahan, Trahan was screaming, agitated, smelled strongly of alcohol, and had red and watery eyes and difficulty standing up. A check of Trahan's driving record revealed that his license was cancelled as inimical to public safety based on multiple previous driving while impaired (DWI) convictions. Because Trahan was "so agitated and unpredictable," the deputy did not administer field sobriety tests. Trahan did not respond when offered a preliminary breath test. After the deputy placed Trahan in the squad car, he kicked the roof and windows and stated that he was not going to take any tests.

At the jail, Trahan was read the Minnesota Implied Consent Advisory, and he asked for his cell phone to contact an attorney. He then made several phone calls but did not contact an attorney. At 1:53 a.m., Trahan stated that he was done with the phone. The deputy offered Trahan a blood or urine test, and Trahan agreed to provide a urine sample. Trahan testified at his plea hearing that he provided a urine sample, which was diluted because he had recently received intravenous fluids at a local emergency department.

2

According to Trahan's plea testimony, the deputy told Trahan that the urine sample "doesn't look right" and that Trahan "must have tampered with it."[1] Trahan acknowledged that the deputy deemed Trahan's conduct to be a refusal to provide a urine sample. The deputy then asked Trahan to take a blood test, which he refused. Trahan testified, "I did refuse the blood test, so I'm guilty of that."

The state charged Trahan with first-degree refusal to submit to a chemical test in violation of Minn. Stat. §§ 169A.20, subd. 2, .24, subds. 1(2), 2 (2012). Trahan pleaded guilty, and the district court sentenced Trahan to 60 months in prison. Trahan then filed a direct appeal but requested a stay pending postconviction proceedings. The stay was granted. In his postconviction petition, Trahan argued that the test-refusal statute is unconstitutional under *Missouri v. McNeely* because it violates due process and the doctrine of unconstitutional conditions and that his plea was invalid because the factual basis does not support a refusal to test.

The district court denied Trahan's petition, ruling that (1) Trahan had not met his burden of establishing the unconstitutionality of the test-refusal statute beyond a reasonable doubt and (2) Trahan's plea was valid because failure to submit to an alternative test requested by the police constitutes a violation of the test-refusal statute. Trahan now appeals.

---

[1] According to the complaint, after several attempts, Trahan failed to provide a sufficient urine sample, and instead put water from the sink into the sample bottle.

## D E C I S I O N

## I.

Trahan argues that his guilty plea is invalid because the factual basis supporting it is insufficient to establish the elements of first-degree test refusal under Minn. Stat. §§ 169A.20, subd. 2, .24, subds. 1(2), 2. We review de novo the denial of a post-sentencing guilty-plea withdrawal motion under the manifest-injustice standard, which requires withdrawal when the defendant shows that the guilty plea was invalid, i.e., not accurate, voluntary, or intelligent. Minn. R. Crim. P. 15.05, subd. 1; *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A party challenging the accuracy of a guilty plea bears the burden of showing its invalidity. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012).

The elements of refusal to submit to testing are (1) probable cause to arrest for driving while impaired, (2) a reading of the implied-consent advisory, (3) a request by a police officer to submit to a chemical test, and (4) refusal to submit to the requested chemical test. *State v. Ouellette*, 740 N.W.2d 355, 359-60 (Minn. App. 2007), *review denied* (Minn. Dec. 19, 2007). Trahan does not challenge the first three elements. But he argues that the factual basis for his plea is insufficient because he "did not admit that he refused to submit to testing." Specifically, Trahan argues that he only refused the blood test because he "felt that he had complied with" the request for a urine test, and thus "the factual basis calls into question the accuracy of the plea." It is undisputed that Trahan refused the alternative (blood) test requested by the deputy.

Refusal to submit to an alternative chemical test constitutes a violation of the test-refusal statute when a first sample is inadequate or the test itself is not valid or reliable.

4

*State, Dep't of Highways v. Lauseng*, 289 Minn. 344, 345, 183 N.W.2d 926, 927 (1971) (holding that when a driver agrees to provide a urine sample but is unable to produce one, his failure to submit to an alternative test constitutes a test refusal); *see also Gunderson v. Comm'r of Pub. Safety*, 351 N.W.2d 6, 7 (Minn. 1984) (holding that a driver who submits to a breath test is obligated to submit to a blood or urine test if the breath testing machine malfunctions); *Nelson v. Comm'r of Pub. Safety*, 779 N.W.2d 571, 576-77 (Minn. App. 2010) (holding that a request for a second blood test was proper when it was determined post-test that the first blood-test kit was expired).

Here, the district court determined that, "once the officer had reason to question the sufficiency of the sample for testing purposes, even where a suspect acts in good faith as did the suspect in *Lauseng*, the officer properly offered [Trahan] an alternative test." Because Trahan concedes on appeal that the sample he provided "looked like water and appeared inadequate," which is consistent with his plea testimony that his urine sample "looked kind of watery" and "came up looking like water," and because he testified unambiguously that he refused to submit to the alternative test requested by the deputy, we conclude that Trahan has not met his burden of demonstrating the invalidity of his guilty plea. The district court therefore properly denied Trahan's motion to withdraw his guilty plea.

## II.

Appellant argues that Minnesota's test-refusal statute is unconstitutional based on *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and *Camara v. Municipal Court*, 387 U.S. 523, 87 S. Ct. 1727 (1967). He therefore argues that his guilty plea must be vacated and

5

his conviction reversed. We review the constitutionality of a statute de novo. *SooHoo v. Johnson*, 731 N.W.2d 815, 821 (Minn. 2007). "Minnesota statutes are presumed constitutional[,] and . . . our power to declare a statute unconstitutional must be exercised with extreme caution and only when absolutely necessary." *Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 722 (Minn. 1999). "[A] party challenging the constitutionality of a statute must demonstrate beyond a reasonable doubt that the statute violates a constitutional provision." *State v. Cox*, 798 N.W.2d 517, 519 (Minn. 2011).

This court has recently rejected Trahan's argument that prosecution for refusing to submit to a chemical test is unconstitutional. *State v. Bernard*, 844 N.W.2d 41, 45 (Minn. App. 2014), *review granted* (Minn. May 20, 2014). In *Bernard*, this court upheld the constitutionality of an appellant's conviction for test refusal, concluding that "[t]he state is not constitutionally precluded from criminalizing a suspected drunk driver's refusal to submit to a breath test." *Id.* at 47. This court reasoned that penalizing the driver's decision to forego taking a chemical test is not unconstitutional when "the requesting officer had a *constitutionally* viable alternative" to pursue a nonconsensual test. *Id.* at 46. Because the officer had a "constitutionally viable alternative" to obtain a warrant when he asked the driver to voluntarily take a chemical test, penalizing the driver's decision to refuse to submit to the test did not implicate any fundamental due-process rights because "the consequent testing under either approach would have been constitutionally reasonable." *Id.* To be clear, *Bernard* recognizes the state's constitutional authority to *punish* test refusal; it does not suggest or provide that the state may conduct a warrantless, nonconsensual test. *See id.* at 45-47.

6

We conclude that *Bernard* controls the resolution of Trahan's due-process argument. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (stating that we are "bound by supreme court precedent and the published opinions of the court of appeals" and must apply precedent to factually similar cases), *review denied* (Minn. Sept. 21, 2010). Applying *Bernard*, we conclude that the district court properly ruled that Trahan has not met his burden of showing that the test-refusal statute violates due process or the Fourth Amendment.

Trahan also contends that the test-refusal statute violates the doctrine of unconstitutional conditions. This court has recently rejected an unconstitutional-conditions argument in the license-revocation context. *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 731 (Minn. App. 2014). In *Stevens*, we held that the appellant's unconstitutional-conditions argument failed because (a) "there is no authority for the proposition that the . . . doctrine applies to a constitutional challenge based on the Fourth Amendment," *id.* at 724; (b) the statute does not authorize a search if the driver refuses,[2] *id.* at 725; (c) "the state's strong interest in ensuring the safety of its roads and highways outweighs a driver's diminished privacy interests in avoiding a search following an arrest for DWI," *id.* at 730; and (d) under *State v. Brooks*, 838 N.W.2d 563, 571 (Minn. 2013), the test-refusal statute does not "coerce[] a driver into surrendering a Fourth Amendment right in a manner that is offensive to the unconstitutional-conditions doctrine," *id.* at 731. Although *Stevens* analyzes the civil consequences of test refusal, its reasoning relies in

---

[2] "If a person refuses to permit a test, then a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2012).

part on criminal DWI cases, in particular with respect to the non-coercive effect of criminal penalties. *See id*. at 731. We conclude based on the reasoning in *Stevens* that Trahan's unconstitutional-conditions argument also fails.

**III.**

In a pro se supplemental brief, Trahan recounts his version of the events surrounding his arrest and the implied-consent process and also asserts that the attorney who represented him through sentencing failed to address what Trahan believes to be a mistake with his criminal-history score. His supplemental assertions are unsupported by legal citation and therefore need not be considered on appeal. *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008).

We have nevertheless reviewed the record, which reveals that Trahan's counsel did alert the district court to Trahan's challenge to one of the convictions underlying his criminal-history score at the plea hearing and again at sentencing. The sentencing court addressed the calculation of Trahan's criminal-history score at some length and determined that the score was technically correct. We therefore conclude that this claim is without merit.

**Affirmed.**