**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1234**

State of Minnesota,
Respondent,

vs.

Tarah Louise Fichtner,
Appellant.

**Filed July 13, 2015**
**Affirmed in part, reversed in part, and remanded**
**Rodenberg, Judge**

St. Louis County District Court
File No. 69DU-CR-13-1034

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Victoria D. Wanta, Assistant County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Johnson, Judge; and Rodenberg, Judge.

**S Y L L A B U S**

The Minnesota Impaired Driving Code provides that the presence of a child under the age of 16 in a motor vehicle at the time of an impaired-driving offense is an aggravating factor and the statute makes no provision permitting multiple children to represent separate, and stacked, aggravating factors. The presence of either one or more

children in a vehicle at the time of an impaired-driving offense may constitute only a single aggravating factor.

## O P I N I O N

**RODENBERG**, Judge

Appellant Tarah Louise Fichtner challenges her convictions for driving while impaired, test refusal, and child endangerment, arguing that (1) the test-refusal statute is unconstitutional, (2) her driving-while-impaired offense was improperly enhanced because the three children present in her motor vehicle at the time of the incident were counted as separate aggravating factors, (3) the district court reversibly erred in admitting a recording of a 911 call at trial, and (4) the district court erred in sentencing her on all three charges arising from the same behavioral incident. We affirm in part, reverse in part, and remand with instructions that the district court sentence appellant on only one count.

## FACTS

Just before 2:00 a.m. on March 11, 2013, St. Louis County Deputy Officer Benjamin Fye initiated a traffic stop of appellant's van. Appellant's parents had called 911 to report that appellant and her husband were intoxicated and driving with three children in the vehicle. Deputy Fye located the vehicle, followed it, and stopped appellant after observing that the van's passenger-side brake light was out. Appellant was ultimately charged by complaint with three counts: second-degree driving while impaired (DWI) in violation of Minn. Stat. §§ 169A.20, subd. 1(1), .25, subd. 1(a) (2012), criminal test refusal in the second degree in violation of Minn. Stat. §§ 169A.20,

2

subd. 2, .25, subd. 1(b) (2012), and child endangerment in violation of Minn. Stat. § 609.378, subd. 1(b)(1) (2012). A jury found appellant guilty of all three counts and the district court entered three convictions and imposed three sentences.

The events leading up to appellant being stopped began in the morning of March 10, 2013, when appellant's parents drove to appellant's home and plowed snow from her driveway. While at the house, appellant's mother knocked on appellant's door and looked in the window because she said she was concerned that appellant and her family were in the house "and the gas got turned on or something." Appellant became angry and upset that her mother was looking in the windows of her home. Later that afternoon, appellant spoke angrily by phone with her father about the incident. Appellant also drove to her parents' house that afternoon, around dusk. She pulled into the driveway, reversed course, and then backed into a snowbank as she left. Appellant did not get out of the car and did not talk to her parents.

Later that evening, appellant, her husband, and their three children, ages 10, 5, and 1, visited a family friend, S.H. S.H. testified at trial that appellant's family came to his house around 9:00 p.m. and discussed possibly leaving town. They stayed for four or five hours. S.H. testified that no one drank alcohol while at his house and that, as a recovering alcoholic, he does not allow alcohol in his home. He testified that appellant was "sober as a ghost," that he "didn't smell alcohol," and that he "know[s] what the alcohol smells like." S.H. testified that he would not have allowed appellant to drive away had she been drinking alcohol, because the children were in the van.

3

Because he was concerned about appellant being upset with her parents, S.H. called appellant's parents to ask her father "what was going on." S.H. stated that he did not tell appellant's father that appellant was drinking because "[t]here would be no reason to tell her dad that she was drinking when she wasn't drinking."

Appellant's father testified at trial that S.H. informed him by phone that appellant and her husband "were planning on leaving town that night" and that S.H. "said they weren't drinking." Appellant's parents then called 911, out of concern that appellant was leaving town with the children. Appellant's father "didn't think they could afford to leave town that night." Her mother testified that they called the police because she "was concerned about the grandkids being in the vehicle late at night." Both parents testified that they were not concerned that appellant was drinking and that was not the real reason that they called 911.

During the 911 call, a recording of which was introduced into evidence at trial, both parents told the dispatcher that appellant was drinking and that they were worried that she would drive with her children in the car and leave town that evening. Appellant's mother spoke with the 911 dispatcher first, stating "I have an emergency" and that, "[m]y daughter has been drinking and she flipped out and she's got the kids." The dispatcher asked appellant's mother "So you're—you're concerned that she's intoxicated and driving, correct?" Appellant's mother responded, "Correct." When appellant's father got on the phone, he stated, "I don't know how intoxicated they are, but I think it's more than beer."

4

Deputy Fye learned of the 911 call around 12:48 a.m. About an hour later, he saw a vehicle matching the description from the 911 call driving toward him. He turned around and followed the vehicle. After noticing that the passenger-side brake light was out, he initiated a traffic stop. He testified that he observed no indication of impaired driving before the stop.

Deputy Fye testified at trial that he approached the driver's side of the vehicle and "observed an overwhelming amount of alcoholic beverage smell emitting from the vehicle." He observed that the driver, who he identified as appellant, had "slurred speech and bloodshot, watery eyes." Deputy Fye testified that he "asked her if she had consumed any alcohol" and that she replied "no."

Deputy Fye asked appellant to exit the van. He testified that, when appellant was outside of the van, he could smell an alcoholic beverage on her. He then conducted standard field sobriety testing, including the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg stand test. Deputy Fye testified that appellant demonstrated clues of intoxication on two of the three field sobriety tests. Appellant refused a preliminary breath test.

Deputy Fye arrested appellant because he believed that she was intoxicated. He transported appellant to the Hermantown Police Department. While in the parking lot, he read the Minnesota Implied Consent Advisory, which was recorded. After the advisory was read to her, appellant stated that she understood it. Deputy Fye then asked appellant if she wanted to contact an attorney and she replied "I just told you I do. I gave you a name. Don't ask me again." After an exchange lasting several minutes, appellant stated

5

that she did not want "to talk to anybody," including an attorney. Ultimately, appellant refused to answer any more of Deputy Fye's questions regarding whether she would like to speak to an attorney, would take blood or urine tests, or was refusing to answer him.

Appellant was charged with driving while impaired (DWI), criminal test refusal, and child endangerment. Although this was appellant's first DWI charge, ordinarily a fourth-degree DWI, *compare* Minn. Stat. § 169A.27 (2012) *with* §§ 169A.03, subd. 3 (2012), 169A.24-.25 (2012) (authorizing a fourth-degree DWI charge when no aggravating factors are present but requiring one or more aggravating factors be present in order to charge a driver with third-degree or second-degree DWI), she was charged with second-degree driving while impaired, because the state counted each child present in the vehicle as a separate aggravating factor. The test-refusal charge was a second-degree offense by virtue of "one aggravating factor [being] present when the violation was committed." Minn. Stat. § 169A.25, subd. 1(b).

Appellant's case proceeded through the district court while *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and *State v. Brooks*, 838 N.W.2d 563 (Minn. 2013), were decided. During this time, the district court initially dismissed appellant's criminal test-refusal charge, concluding that the test-refusal statute was unconstitutional, but it reinstated the charge after *Brooks* was decided.[1]

---

[1] Additionally, *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015), was decided while this case was on appeal and being briefed. Appellant submitted her principal brief before *Bernard* was decided, and, in her reply brief, appellant concedes that *Bernard* applies to her case, but "presents the issue to preserve it for further review."

Appellant also moved the district court to dismiss the charge of DWI and child endangerment for want of probable cause, and to dismiss the second-degree DWI charge as improperly stacking each child in the vehicle as a separate aggravating factor. The district court denied the motion to dismiss and concluded that the Minnesota Impaired Driving Code "provides no guidance on whether multiple children count as separate aggravating factors." The court determined that, because section 169A.095 allows for qualified prior impaired-driving incidents to be stacked, "[w]ithout further guidance, it is reasonable to interpret the similar singular language of §169A.03, subd. 3(3) in the same way." The district court determined that "[j]ust as 'a qualified prior impaired driving incident' means each prior incident is a separate aggravating factor, so does 'a child' mean each child in the vehicle is a separate aggravating factor."

Before trial, appellant made an oral motion challenging the admission of the 911 call. The district court deferred ruling until the state sought to introduce the call during trial. Ultimately, the district court allowed the 911 call to be admitted as evidence stating:

> The Court has heard the -- the 9-1-1 call. It is very clear that the first person on the call to the 9-1-1 operator is [appellant's mother] and it's as clear that the other person then on the phone after [appellant's mother] is the father who just testified. . . .
>
> There is no statement about what [S.H.] said because the operator stopped [appellant's father] from stating what [S.H.] just told me, and so there's no hearsay there. . . . [T]he Court is going to allow this 9-1-1 call to be introduced into evidence and played for the jury under Rule 801 [(d)(1)(A)] as a prior statement of witnesses who have testified inconsistent with

7

the declarant's testimony which was given under oath at trial.
The Court will allow it.

The case was tried to a jury, which returned guilty verdicts on all three counts. At sentencing, the district court entered three convictions and imposed concurrent one-year sentences for all three counts. Appellant did not object to her sentence before the district court. This appeal followed.

## ISSUES

I.      Did the district court err in concluding that the criminal test-refusal statute is constitutional?

II.      Did the district court err in interpreting the Minnesota Impaired Driving Code to permit enhancement of the driving-while-impaired and test-refusal charges by counting each child present in a vehicle as a separate aggravating factor?

III.      Did the district court abuse its discretion in admitting the 911 call, and if so, does the error require reversal?

IV.      Did the district court err in sentencing appellant on all three counts of which she was convicted, all arising from the same behavioral incident?

## ANALYSIS

## I.

Appellant argues that she cannot constitutionally be convicted for refusing to submit to chemical testing. Minnesota's Impaired Driving Code criminalizes refusal to submit to alcohol concentration testing "of the person's blood, breath, or urine." Minn. Stat. § 169A.20, subd. 2. The Minnesota Supreme Court held in *Bernard* that "the test

8

refusal statute is a reasonable means to a permissive object and that it passes rational basis review." *Bernard*, 859 N.W.2d at 774. *Bernard* upholds the criminal test-refusal statute, stating that a breath test is constitutionally permissible as a search incident to arrest, and a person "does not have a fundamental right to refuse a constitutional search." *Id.* at 772-73.

In her principal brief, submitted before the supreme court's decision in *Bernard*, appellant argued that Minnesota's test-refusal statute violates substantive due process and the doctrine of unconstitutional conditions. Therefore, she argued that this court's decision in *State v. Bernard*, 844 N.W.2d 41 (Minn. App. 2014), *aff'd on other grounds*, 859 N.W.2d 762 (Minn. 2015), was of no precedential value because the case was then before the supreme court on a petition for further review. In her reply brief, appellant acknowledged the supreme court's *Bernard* decision and that "this court is plainly bound" by that decision. No argument was advanced in either brief that *Bernard* is distinguishable because of the difference in the type of test that was offered. In *Bernard*, the driver refused a breath test. 859 N.W.2d at 765. Here, appellant was offered a choice of a blood or urine test. Because that possible distinction has not been raised or briefed, the issue of whether that difference is legally significant is not before us. *See Melina v. Chapman*, 327 N.W.2d 19, 20 (Minn. 1982) (explaining that issues "not argued in the briefs . . . must be deemed waived). We therefore affirm the district court's determination that appellant's test-refusal conviction is constitutional.

## II.

Appellant also argues that, despite there having been three children in her van when she was arrested, Minn. Stat. § 169A.03, subd. 3(3), permits only one aggravating factor to be used for enhancement. Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996). The objective of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). Statutory interpretation begins with a determination of whether a statute on its face is clear or ambiguous. *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn. 2002). "A statute is only ambiguous if its language is subject to more than one reasonable interpretation." *Id.* (annotation omitted). If the statutory language is unambiguous, a court will not engage in any further construction and instead looks to the statute's plain meaning. *Id.*; *see also Leifur v. Leifur*, 820 N.W.2d 40, 43 (Minn. App. 2012) (noting that "meritorious policy arguments" were rejected because we "may not disregard unambiguous statutory language").

The Minnesota Impaired Driving Code defines terms used in the statute. *See* Minn. Stat. § 169A.03. The term "aggravating factor" includes "having a child under the age of 16 in the motor vehicle at the time of the offense if the child is more than 36 months younger than the offender." Minn. Stat. § 169A.03, subd. 3(3). The statute also identifies as aggravating factors a "qualified prior impaired driving incident" and "having

10

an alcohol concentration of $0.20^2$ or more" within two hours of the offense. *Id.*, subd. 3(1)-(2).

The Minnesota Impaired Driving Code provides explicit guidance on "Determining [the] Number of Aggravating Factors" in section 169A.095, stating that "subject to section 169A.09 . . . each qualified prior impaired driving incident within the ten years immediately preceding the current offense is counted as a separate aggravating factor." Minn. Stat. § 169A.095 (2012). Section 169A.09 states that "[p]rior impaired driving convictions . . . must arise out of a separate course of conduct to be considered as multiple qualified prior impaired driving incidents under this chapter" and that "[w]hen a person has a prior impaired driving conviction and a prior impaired driving-related loss of license based on the same course of conduct, either the conviction or the loss of license may be considered a qualified prior impaired driving incident, but not both." Minn. Stat § 169A.09 (2012). The statute contains no provision concerning whether multiple children in the vehicle may be counted as multiple aggravating factors under section 169A.03, subd. 3(3).

Appellant was charged with second-degree DWI in violation of Minn. Stat. §§ 169A.20, subd. 1(1), .25, subd. 1(a), based solely on the state's contention that each of the three children in the vehicle is a separate aggravating factor. Appellant agrees that one aggravating factor, "a child," applies, but argues that the district court erred in denying her motion to dismiss the second-degree charge for want of more than one

---

[2] We note that effective August 1, 2015, Minn. Stat. § 169A.03, subd. 3(2) specifies an alcohol concentration of .16 rather than .20. 2015 Minn. Laws, ch. 65, art. 6, § 5.

aggravating factor. The state argues that each child can be deemed a separate aggravating factor to enhance appellant's DWI charge because there is "no language prohibiting the State from using multiple children in a motor vehicle as separate aggravating factors" and because the Impaired Driving Code specifically allows for multiple DWI convictions to aggregate to enhance a charge.

There is no relevant caselaw interpreting the application of Minn. Stat. § 169A.095 to multiple children present in a vehicle at the time of a DWI offense. This is therefore a case of first impression.

The plain language of the statute provides that the presence of "a child" in the vehicle at the time of a DWI offense is an aggravating factor. Minn. Stat. § 169A.03, subd. 3(3). The statute providing guidance on calculating and combining aggravating factors refers only to prior impaired driving incidents. *See* Minn. Stat. § 169A.095. Section 169A.09 limits qualified prior impaired driving incidents to one aggravating factor for a single course of conduct.

The district court concluded that the singular description of "a qualified prior driving incident" in the definitions section of the statute, read together with section 169A.095, allowing each such incident to count as a separate aggravating factor, indicates that a similar interpretation should apply to "a child" in the vehicle, resulting in each child being counted as a separate aggravating factor. We hold that the district court erred. The presence of one or more children, under the plain language of the statute, may constitute only one aggravating factor.

12

The statute plainly states that the presence of "a child" in a vehicle in which the driver is impaired is an aggravating factor. *See* Minn. Stat. § 169A.03, subd. 3(3). Whether "a child" is present is binary. The identified factor either is or is not present. The legislature knows how to provide for aggregating a factor for enhancement purposes, as it has explicitly done so concerning prior qualified impaired driving incidents. *See* Minn. Stat. § 169A.095. Because the legislature made no similar provision concerning the presence of "a child" in the vehicle, and because, in interpreting a statute, "the singular includes the plural; and the plural, the singular," Minn. Stat. § 645.08(2) (2014), we conclude that the plain language of the statute provides that the presence of either a child or multiple children may constitute only one aggravating factor. Multiple children present in a vehicle cannot be deemed multiple, stackable aggravating factors. *See State v. Corbin*, 343 N.W.2d 874, 876 (Minn. App. 1984) (stating that "we 'cannot supply that which the legislature purposely omits or inadvertently overlooks'" (quoting *Northland Country Club v. Comm'r of Taxation*, 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976))).

Because we conclude that the district court improperly permitted each child to constitute a separate aggravating factor, and allowed aggregation of those aggravating factors to enhance appellant's driving-while-impaired charges, we reverse appellant's conviction of second-degree DWI and remand with directions to the district court to enter a conviction for third-degree DWI instead. *See* Minn. Stat. § 169A.26, subd. 1(a) (2012). The state has proven only one aggravating factor. *See* Minn. R. Crim. P. 28.02, subd. 12

13

(if reversing, this court must "reduce the conviction to . . . an offense of lesser degree . . . [and] remand [to the district court] for resentencing").[3]

### III.

Appellant argues that the district court reversibly erred in admitting the recording of her parents' 911 call. A district court's evidentiary rulings will generally not be reversed absent a clear abuse of discretion. *State v. Flores*, 595 N.W.2d 860, 865 (Minn. 1999). "A district court abuses its discretion when it bases its conclusions on an erroneous view of the law." *Miller v. Lankow*, 801 N.W.2d 120, 127 (Minn. 2011). An erroneous evidentiary ruling requires reversal when we conclude that an appellant has demonstrated "a reasonable possibility that the verdict might have been different if the evidence had been admitted." *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994). "On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Hearsay evidence is generally inadmissible, unless an exception exists. Minn. R. Evid. 802. Rule 801 provides that a statement "inconsistent with the declarant's testimony, and . . . given under oath subject to the penalty of perjury at a trial, hearing, or

---

[3] Because a conviction for second-degree test refusal requires only one aggravating factor, that conviction is unaffected. Minn. Stat. § 169A.25, subd. 1(b).

other proceeding, or in a deposition" is not hearsay and is therefore admissible. Minn. R. Evid. 801(d)(1)(A).

At trial, the district court relied on rule 801(d)(1)(A) in admitting the recorded 911 call. Appellant argues that the district court erred because, while the parents' statements in the recorded call were inconsistent with their trial testimony, the call was not made under oath. The state concedes that the district court erred in admitting the 911 call under rule 801(d)(1)(A), but argues that the recording consisted of "nontestimonial statements meant to help law enforcement in an ongoing emergency," and the recording was therefore admissible as non-hearsay.

The 911 call was not "given under oath." The district court therefore erred in admitting this evidence under rule 801(d)(1)(A). That does not end our analysis. We next consider whether, despite the district court's error, the evidence is admissible on other grounds. *See State v. Robinson*, 699 N.W.2d 790, 798-99 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006) (affirming the district court's decision to admit testimony when we "disagree[d] with the reasoning" used by the district court).

The state argues that, while the recorded 911 call is not admissible under rule 801(d)(1)(A), it is admissible under *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266 (2006). *Davis* addresses the question of whether nontestimonial hearsay statements enabling police to meet an ongoing emergency are "subject to traditional limitations upon hearsay evidence [but] not subject to the Confrontation Clause." *Id.* at 821-24, 126 S. Ct. at 2273-74. Statements, for purposes of analysis under the Confrontation Clause, are nontestimonial "when made in the course of police interrogation under circumstances

15

objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822, 126 S. Ct. at 2273. But *Davis* did not expand the breadth of admissible hearsay to allow admission of *all* nontestimonial hearsay concerning emergencies.

The Confrontation Clause may bar the admission of otherwise admissible hearsay. In *State v. Usee*, 800 N.W.2d 192, 196-98 (Minn. App. 2011), *review denied* (Minn. Aug. 24, 2011), we analyzed whether the Confrontation Clause applied to a statement given to police by a witness. After concluding that the statement was nontestimonial, we "next address[ed] whether admission of the statement was error under Minnesota's rules of evidence." *Id.* at 198.

The state fails to analyze whether the 911 recording is admissible hearsay under the rules of evidence. Instead, the state summarily concludes that the 911 call is admissible as nontestimonial statements made during an ongoing emergency. Because the state does not provide any analysis identifying an evidentiary rule permitting admission of the out-of-court statement, we do not consider whether some unidentified basis for admission might exist. *See State v. Meldrum*, 724 N.W.2d 15, 22 (Minn. App. 2006) (stating that "if a brief fails to make or develop any argument at all, the issue asserted is considered waived") (citing *State v. Butcher*, 563 N.W.2d 776, 780-81 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997)), *review denied* (Minn. Jan. 24, 2007).

Because the state offers no alternative basis for admission of the 911 call under the rules of evidence, we next consider whether there is a reasonable possibility that the verdict might have been different without the 911 call. An evidentiary error by the

district court requires reversal only if the defendant was prejudiced by the erroneous ruling. *See Amos*, 658 N.W.2d at 203 (stating that, on appeal, appellant "has the burden of establishing . . . that appellant was . . . prejudiced"). In reviewing whether an evidentiary error prejudiced a defendant, we consider (1) the manner in which the evidence was presented, (2) whether it was highly persuasive, (3) whether it was used in closing argument, and (4) whether it was effectively countered by the defendant. *State v. Al-Naseer*, 690 N.W.2d 744, 748 (Minn. 2005). If there is a reasonable possibility that the verdict might have been different if the evidence had not been admitted, then the error is prejudicial. *Post*, 512 N.W.2d at 102.

The recorded 911 call was presented during appellant's father's testimony and directly contradicted the testimony of both of appellant's parents. Both denied at trial that they had information that appellant was drinking that night. The jury asked that the 911 call be replayed during their deliberations, and it was played twice.[4] In total, the jury heard the 911 call three times. The recorded 911 call corroborated other evidence, specifically Deputy Fye's observations and suspicions that appellant was intoxicated or had been drinking alcohol.

The recorded 911 call was admitted and used by the state both as substantive evidence and to impeach the testimony of appellant's parents. Accordingly, we analyze the admission of it as it applies to all three of the offenses of conviction.

---

[4] The jury also requested to hear the audio recording of Deputy Fye conducting the implied consent process. The jury only asked to hear this recording once.

17

Both of counsel discussed the 911 call in summation. The state argued that the call was proof that appellant was drinking alcohol and that her parents were concerned about her drinking and driving. It theorized that appellant's parents and S.H. were lying at trial to protect appellant. Appellant's counsel attempted to discredit the content of the 911 call by highlighting the differences between the testimony of appellant's parents and the 911 call recording. Additionally, appellant's counsel emphasized that appellant's father stated on the 911 call that he had not observed appellant drinking and that he "basically concludes he doesn't know how intoxicated [appellant] is."

The 911 call was not substantive evidence proving any element of the test-refusal charge.[5] *See* Minn. Stat. § 169A.25, subd. 1(b). And the testimony of appellant's parents, although impeached by the out-of-court statement, did not concern the test-refusal charge. Accordingly, there is no reasonable possibility that the recorded call had any effect on the jury's verdict on that charge. We therefore affirm the test-refusal

---

[5] The offense of refusal to submit to testing has six elements. 10A *Minnesota Practice*, CRIMJIG 29.28 (2014). As applicable to the facts here, the second element requires proof that "The peace officer placed the defendant under lawful arrest," and provides that an "arrest is 'lawful' when the officer has reason to believe that the defendant is in violation of the law." *Id.* While the 911 call occasioned Deputy Fye's following appellant, his basis for stopping her included the 911 call and his observation that the van had a brake light that was not working properly. Deputy Fye's *arrest* of appellant was based on observations he made after he had stopped her, including her failure to competently perform standard field sobriety tests and her refusal to take a PBT, which observations in turn led him to conclude that appellant was impaired by alcohol. The state's proof of this second element did not depend on the 911 call. And none of the other elements of refusal to submit to testing required proof of actual impairment. *Id.* Therefore, the substance of her parents' statements during the 911 call is not significant in analyzing whether appellant criminally refused testing.

conviction. But the situation is different concerning the DWI and child-endangerment charges, each of which depended upon proof of appellant's state of intoxication.

The state's most persuasive evidence of appellant's alcohol impairment came through the testimony of Deputy Fye. He testified that, based on his observations of appellant, her performance on field-sobriety testing, and his training and experience, she was under the influence of alcohol.

In analyzing the relevant factors, we conclude that the admission of the 911 recording was harmless and that "the jury's verdict was surely unattributable to the error." *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009). Deputy Fye testified concerning his trained observations of appellant as she failed standard field sobriety tests. Appellant refused to supply a breath sample after a thorough and patient explanation of the implied-consent process. And the manner of appellant's refusal is itself indicative of impairment. In context, the state's evidence of intoxication through the testimony of Deputy Fye was far more important and persuasive than a recorded phone call from two people who by all accounts had no first-hand knowledge of appellant's state of impairment. It is highly improbable that the recorded call influenced the jury to convict. We conclude that the jury's verdict on the charges of DWI and child endangerment would surely have been the same even without the admission of the 911 call. Therefore, although the district court erred in admitting the recording under rule 801(d)(1)(A), we see no basis for reversal on this ground.

# IV.

"[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2012); *accord State v. Bauer*, 776 N.W.2d 462, 477 (Minn. 2009). When the facts are not in dispute, the question of whether multiple offenses are part of a single behavioral incident is one of law that we review de novo. *State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012); *State v. Marchbanks*, 632 N.W.2d 725, 731 (Minn. App. 2001).

"The purpose of [section 609.035] is to limit punishment to a single sentence where a single behavioral incident results in the violation of more than one criminal statute." *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995) (quotation omitted). The statute "contemplates that a defendant will be punished for the most serious of the offenses arising out of a single behavioral incident because imposing up to the maximum punishment for the most serious offense will include punishment for all offenses." *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (quotations omitted). When determining the most serious of multiple gross misdemeanor charges, "it is proper for a court to look to the nature of the offenses to determine which offense is the most serious." *Id.* at 323. When the statutory maximum penalties for multiple gross misdemeanors are the same, "the offense that formed the essence of the behavioral incident is the most serious offense." *Id.*

The supreme court has treated DWI offenses as nonintentional crimes. *State v. Clement*, 277 N.W.2d 411, 413 (Minn. 1979); *State v. Johnson*, 273 Minn. 394, 404-05, 141 N.W.2d 517, 525 (1966). When the offenses at issue include intentional and

20

unintentional crimes, this court requires that "the offenses (1) occurred at substantially the same time and place and (2) arose from a continuing and uninterrupted course of conduct, manifesting an indivisible state of mind or coincident errors of judgment." *Bauer*, 776 N.W.2d at 478 (Minn. App. 2009) (quotation omitted).

All of appellant's convictions arise from the same behavior: her impaired driving with her children in the vehicle. The record admits of no conclusion other than that appellant can be sentenced only once for this behavior, as appellant and the state agree. Therefore, we reverse appellant's sentences and remand to the district court for resentencing on only what it determines to be the most serious of these three gross misdemeanor convictions arising from the behavioral incident of March 22, 2013. *See State v. St. John*, 847 N.W.2d 704, 709 (Minn. App. 2014) (holding, in a case not involving a conviction of child endangerment, that "third-degree driving under the influence is a more serious offense than second-degree test refusal.")

## D E C I S I O N

We conclude that appellant has failed to demonstrate that her test-refusal conviction was unconstitutional. Although the district court erred in admitting the recorded 911 call under Minn. R. Evid. 801(d)(1)(A), the error was harmless. We affirm the convictions of second-degree test refusal and child endangerment. But because the Minnesota Impaired Driving Code provides that the presence of a child under the age of 16 in a motor vehicle at the time of the offense is one aggravating factor, and makes no provision permitting multiple children to represent separate, and stacked, aggravating factors, we reverse appellant's conviction for second-degree DWI and remand to the

21

district court to enter a third-degree conviction on that count. Finally, because the district court erred in sentencing appellant for three offenses arising from the same behavioral incident, we reverse appellant's sentences and remand to the district court for resentencing, with a sentence only on the count the district court concludes is the most serious of these three gross misdemeanors.

**Affirmed in part, reversed in part, and remanded.**