*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1635**

State of Minnesota,
Respondent,

vs.

Robert Jamal Poole,
Appellant.

**Filed August 22, 2016
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-25867

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Schellhas, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his conviction of possession of a firearm by an ineligible person, arguing that (1) the district court erred by denying his motion to suppress evidence

found after a search of his person; (2) his conviction must be reversed because a BB gun is not a firearm within the meaning of Minn. Stat. § 624.713 (2014); (3) the district court committed reversible error by allowing police officers to testify that a BB gun is a firearm; and (4) the district court committed reversible error in instructing the jury. We affirm.

**FACTS**

On August 31, 2014, a concerned citizen called 911 and reported that two black males were passing a gun back and forth near a transit hub. The caller stated that one of the males was wearing a red shirt and tan shorts and the other male was wearing a black shirt. This information was broadcast by the dispatcher to officers of the Brooklyn Center Police Department.

Five officers responded to the scene. Upon spotting two males matching the description provided by dispatch, the officers approached them with their weapons drawn. The officers ordered both males, one of whom was later identified as appellant Robert Jamal Poole, to lie on the ground, whereupon they were both handcuffed. As he was being frisked for weapons, Poole stated that he had a BB gun in his waistband. After the black BB gun was retrieved by an officer, Poole was placed in the back seat of a squad car, read his *Miranda* rights, and interviewed. After running a background check on Poole, the officers discovered that Poole was prohibited from possessing firearms and placed him under arrest.

Poole was charged with being a prohibited person in possession of a firearm in violation of Minn. Stat. § 624.713, subd. 1(2). He moved to suppress all evidence on the grounds that it was obtained as the result of an unlawful seizure. The district court denied

2

the motion, and the matter was tried to a jury. The jury found Poole guilty of the offense, and he was sentenced to 48 months in prison. This appeal followed.

**D E C I S I O N**

**I.**

Poole argues that the district court erred by denying his motion to suppress all evidence on the grounds that it was obtained as the result of an unlawful seizure.[1] "When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

The Fourth Amendment of the United States Constitution and article 1, section 10, of the Minnesota Constitution guarantee individuals the right to be free from unreasonable searches and seizures. A police officer seizes a citizen when the officer restrains a citizen's liberty by means of physical force or show of authority. *State v. Klamar*, 823 N.W.2d 687, 692 (Minn. App. 2012). "Under the Minnesota Constitution, a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *Id.* (quotation omitted).

---

[1] While Poole argued at the district court level that the police's seizure of him constituted a de facto arrest, requiring probable cause, rather than a brief investigatory seizure, he does not raise this argument on appeal. Therefore, we limit our analysis to whether the police had reasonable suspicion to conduct a brief investigatory detention.

"[W]arrantless, investigatory seizures that are limited in scope, duration, and purpose are reasonable if supported by circumstances that create an objectively reasonable suspicion of criminal activity." *State v. Theng Yang*, 814 N.W.2d 716, 718 (Minn. App. 2012). The reasonable suspicion standard is "not high." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (quotation omitted). In order to seize an individual, "[p]olice must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted).

The reasonable suspicion standard may be met based on information provided by a reliable informant. *Id.* "But information given by an informant must bear indicia of reliability that make the alleged criminal conduct sufficiently likely to justify an investigatory stop by police." *Id.* at 393–94. Tips from private citizens are presumed to be reliable, especially "when informants give information about their identity so that the police can locate them if necessary." *Id.* at 394 (quotation omitted).

We conclude that there was a reasonable, articulable suspicion of criminal activity based on the information provided in the tip. The caller, who provided his or her name and phone number, reported that two black males were passing a gun back and forth near a transit hub and described their clothing. Upon arriving at the transit hub, officers spotted two males matching the description of the suspects. Although possession of a handgun is not illegal, the fact that the officers had received information that two males were passing a handgun back and forth near a public transit hub gave the officers reasonable suspicion

4

that they were engaging in criminal conduct by recklessly handling a firearm so as to endanger the safety of another, a crime under Minn. Stat. § 609.66, subd. 1(a)(1) (2014).[2]

"Once a person is permissibly stopped, an officer may frisk that person for weapons if the officer is justified in believing that the suspect is armed and dangerous." *State v. Munson*, 594 N.W.2d 128, 137 (Minn. 1999). Based on their reasonable suspicion that Poole was engaged in criminal activity and their justified belief that he may have been armed, the officers properly frisked Poole and discovered a BB gun.

The officers needed probable cause to believe Poole had committed a crime for which arrest is permitted before they could arrest him. *State v. Ortega*, 770 N.W.2d 145, 150 (Minn. 2009) ("The crime for which probable cause exists must be one for which a custodial arrest is authorized."). An officer may arrest an individual without a warrant when a public offense, including a gross misdemeanor, has been committed or attempted in the officer's presence. Minn. Stat. § 629.34, subd. 1(c)(1) (2014); *see* Minn. R. Crim. P. 6.01, subd. 2 (providing for permissive issuance of citations, rather than arrest, in gross misdemeanor and felony cases). Probable cause to arrest "exists where the facts would lead a person of ordinary care and prudence to hold an honest and strong suspicion that the

---

[2] The state does not argue on appeal, and did not argue to the district court, that the officers had a reasonable suspicion of any crime other than possessing a weapon in public without a permit in violation of Minn. Stat. § 624.714, subd. 1a (2014). However, "[a] reviewing court may uphold a [seizure] as valid on other grounds, even if not properly asserted by the parties." *See State v. Bauman*, 586 N.W.2d 416, 422 (Minn. App. 1998), *review denied* (Minn. Jan. 27, 1999); *see also State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990).

person under consideration is guilty of a crime." *State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001), *review dismissed* (Minn. June 22, 2001).

Following their valid frisk, the officers had probable cause to arrest Poole based on their discovery that he was carrying a BB gun in public. Minnesota law provides that "[w]hoever carries a BB gun . . . on or about the person in a public place is guilty of a gross misdemeanor." Minn. Stat. § 624.7181, subd. 2 (2014). The definition of "carry" under Minn. Stat. § 624.7181, subd. 1(b)(1) (2014), does not include carrying a BB gun "to, from, or at a place where firearms are repaired, bought, sold, traded, or displayed, or where hunting, target shooting, or other lawful activity involving firearms occurs, or at funerals, parades, or other lawful ceremonies." It is undisputed that Poole was not at any of the locations that would exempt him from liability under Minn. Stat. § 624.7181 (2014) at the time he was seized by police, and there is no evidence in the record that Poole was traveling to or from any of those locations. Poole points out, however, that at the time they seized him, police did not have information suggesting that he was not carrying the BB gun to or from a place where possession of a BB gun would have been lawful. The question then becomes whether an officer has probable cause to arrest an individual for carrying a BB gun in a public place without knowing whether one of the exceptions to the definition of "carry" under Minn. Stat. § 624.7181 applies.

The Minnesota Supreme Court's decision in *Timberlake* is informative. *Timberlake* reaffirmed the supreme court's earlier decision in *State v. Paige*, 256 N.W.2d 298 (Minn. 1977), that the "without a permit" language in Minn. Stat. § 624.714 (2006), which prohibits carrying weapons in public without a permit, does not add another element to the

6

crime, but rather creates an exception that requires the defendant to present evidence of a permit in order to avoid criminal liability. *Timberlake*, 744 N.W.2d at 394–96.

In deciding that the phrase "without a permit" in Minn. Stat. § 624.714 did not add an element to the crime, but only created an exception to the general prohibition against possessing a pistol, the supreme court in *Paige* reasoned that a defendant had the immediate opportunity to present his permit to avoid prosecution and the statute was intended to prevent possession of firearms in places where they are most likely to cause harm in the wrong hands. 256 N.W.2d at 303. The same considerations are at play under Minn. Stat. § 624.7181, which is also aimed at preventing harm caused by possession of certain firearms, namely BB guns, rifles, or shotguns, in public.

Furthermore, like Minn. Stat. § 624.714, which generally prohibits the carrying of a pistol unless the individual possesses a permit, Minn. Stat. § 624.7181 generally prohibits the carrying of a BB gun in public unless the BB gun is being carried to, from, or at certain specified locations. But, unlike Minn. Stat. § 624.714, which includes the "without a permit" language in describing the offense, Minn. Stat. § 624.7181, subd. 2, provides simply that "[w]hoever carries a BB gun . . . on or about the person in a public place is guilty of a gross misdemeanor" and lists exclusions from the definition "carry" in a separate provision, providing a stronger case than was present in *Timberlake* for concluding that the exclusions are merely exceptions to criminal liability. Under these circumstances, we conclude that the language in Minn. Stat. § 624.7181 delineating where carrying a BB gun in public is not a crime is clearly an exception to the general prohibition against carrying a BB gun in a public place, rather than an element of the crime.

7

To establish probable cause to arrest, "the police must show that they reasonably could have believed that a crime has been committed by the person to be arrested." *State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997) (quotation omitted). Because Poole possessed the BB gun in public in the presence of the officers, the officers had reason to believe that Poole had committed a crime and therefore lawfully arrested him, even though they were not aware whether Poole's conduct would fall within one of the exceptions of section 624.7181. Because the police had reasonable suspicion to seize Poole and probable cause to arrest him for a violation of Minn. Stat. § 624.7181, the district court did not err by denying Poole's motion to suppress.

## II.

Poole argues that his conviction must be reversed because a BB gun is not a firearm within the meaning of Minn. Stat. § 624.713. In *State v. Fleming*, 724 N.W.2d 537, 541 (Minn. App. 2006), this court held that the definition of "firearm" in Minn. Stat. § 624.713, subd. 1, includes a BB gun. The *Fleming* court drew upon the Minnesota Supreme Court's decision in *State v. Seifert*, 256 N.W.2d 87 (Minn. 1977), where the supreme court held that a BB gun was a "firearm" within the definition of "dangerous weapon" under Minn. Stat. § 609.02, subd. 6 (1974). *Fleming*, 724 N.W.2d at 539–40. Poole argues that *Fleming* was wrongly decided and should not be used to decide this case. But, because we have controlling caselaw holding that a BB gun is a firearm within the meaning of Minn. Stat. § 624.713, we reject this argument.[3]

---

[3] This court recently reaffirmed *Fleming* in *State v. Haywood*, 869 N.W.2d 902 (2015), *review granted* (Minn. Dec. 15, 2015). This court held in *Haywood* that "[a] BB gun is a

**III.**

Poole contends that the district court erred by allowing two police officers to testify that a BB gun is a firearm under Minnesota law. When asked if a BB gun is a firearm under Minnesota law, one police officer testified, over Poole's objection, that a $CO_2$ firearm, such as the BB gun found in Poole's possession, is considered a firearm under Minnesota law. Another police officer also testified that a BB gun is a firearm under Minnesota law.

However, any error in admitting the testimony was harmless. "On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Fichtner*, 867 N.W.2d 242, 250 (Minn. App. 2015) (quotation omitted), *review denied* (Minn. Sept. 29, 2015). Evidentiary errors in admitting testimony "warrant a new trial only when the error substantially influences the jury's decision." *State v. Valtierra*, 718 N.W.2d 425, 435 (Minn. 2006) (quotations omitted). As discussed above, Minnesota law unambiguously provides that a BB gun is a firearm within the meaning of Minn. Stat. § 624.713. *See Fleming*, 724 N.W.2d at 541. And, as discussed in the next section, the district court properly instructed the jury that a BB gun is a firearm under Minnesota law. As the officers' testimony merely duplicated

firearm within the meaning of prohibited possession of a firearm under Minn. Stat. § 609.165, subd. 1b(a) (2012)." *Id.* at 904. This court relied heavily on *Fleming* in making its decision, noting that the possession offense in *Fleming*, which is the same offense as in the present case, was substantively identical to the possession offense that Haywood was charged with. *Id.* at 907. Although it is possible that the Minnesota Supreme Court's pending decision in *Haywood* may alter the law regarding whether a BB gun is a firearm within the meaning of Minn. Stat. § 624.713, we are bound by this court's decision in *Fleming* unless and until the Minnesota Supreme Court overrules that decision.

9

the district court's proper jury instruction, Poole cannot demonstrate any prejudice from the officers' testimony.

## IV.

Poole argues that the district court committed reversible error in instructing the jury, arguing that the district court impermissibly directed a verdict on an essential element of the charged offense by instructing the jury that a BB gun is a firearm and erred by instructing the jury that knowledge that a BB gun is a firearm is not an element of the offense.

District courts have considerable latitude in selecting the language of jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011). We review a district court's jury instructions for an abuse of discretion. *See State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012). "Jury instructions are viewed as a whole to determine whether they fairly and adequately explain the law." *State v. Moore*, 699 N.W.2d 733, 736 (Minn. 2005). A jury instruction that materially misstates the law is erroneous. *Id.*

As discussed above, this court held in *Fleming* that the operative definition of "firearm" for the purposes of Minn. Stat. § 624.713, subd. 1, includes a BB gun. 724 N.W.2d at 541. Despite this court's holding in *Fleming*, Poole argues that it was error for the district court to instruct the jury that a BB gun is a firearm because doing so effectively directed a verdict on an element of the charged offense. Poole cites the Minnesota Supreme Court's decision in *Moore* in support of his argument. In *Moore*, the defendant was charged with first-degree assault for an incident that resulted in the loss of the victim's

tooth. 699 N.W.2d at 735–36. At trial, the district court instructed the jury, over Moore's objection, that the loss of a tooth constituted great bodily harm. *Id.* at 736.

The supreme court reversed, stating that whether an injury constitutes great bodily harm is a question for the jury. *Id.* at 737–38. The supreme court noted that this court held in *State v. Bridgeforth*, 357 N.W.2d 393, 394 (Minn. App. 1984), *review denied* (Minn. Feb. 6, 1985), that there was a sufficient factual basis for a plea to first-degree assault where a defendant admitted that the victim had lost a tooth when he had assaulted her. *Id.* at 737. The supreme court stated, however, that "there is a distinction between determining whether the evidence was sufficient to support a plea or conviction, as *Bridgeforth* concluded, and instructing the jury as a matter of law that an element of the offense has been established." *Id.* The supreme court stated that because the jury instruction removed from the jury's consideration the question of whether the loss of a tooth constituted great bodily harm, the district court's instructions "violat[ed] the requirement that criminal convictions must rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Id.* (quotation omitted).

While *Bridgeforth* did not hold that the loss of a tooth constitutes great bodily harm as a matter of law, this court has held that "the operative definition of 'firearm' includes a BB gun" under Minn. Stat. § 624.713, subd. 1. *Fleming*, 724 N.W.2d at 541. Unlike our holding in *Bridgeforth*, our holding in *Fleming* was not merely that evidence of a defendant's possession of a BB gun was sufficient to satisfy the "firearm" element of the offense; rather, we determined that a BB gun is a firearm as a matter of law under Minn.

Stat. § 624.713. The district court "must instruct the jury on all matters of law necessary to render a verdict." Minn. R. Crim. P. 26.03, subd. 19(6). Here, the district court instructed the jury that "[a] BB gun is a firearm if it discharges a shot or projectile by me[a]ns of explosive gas or compressed air." The instruction was an accurate description of the law. *See Fleming*, 724 N.W.2d at 540–41. Accordingly, the district court did not erroneously direct a verdict on an element of the offense.

Next, Poole argues that the district court misstated the law by instructing the jury that "knowledge that a BB gun is a firearm is not an element of the crime." The district court instructed the jury that the first element of possession of a firearm is that "the defendant knowingly possessed a firearm." Poole concedes that there was sufficient evidence that he knowingly possessed the BB gun, but argues that Minn. Stat. § 624.713 requires that the state prove that he knew that a BB gun was a firearm under the law.

Minn. Stat. § 624.713 does not have an express mens rea or knowledge requirement. Rather, the statute provides that "a person who has been convicted of, or adjudicated delinquent or convicted as an extended jurisdiction juvenile for committing, in this state or elsewhere, a crime of violence" is not eligible to possess a firearm. Minn. Stat. § 624.713, subd. 1(2). The Minnesota Supreme Court has said that, in order to obtain a conviction under Minn. Stat. § 624.713, the state must prove that an ineligible person possessed a firearm with "knowledge of the prohibited item." *State v. Salyers*, 858 N.W.2d 156, 161 (Minn. 2015).

But, the state need not prove that the defendant had an accurate understanding of the law, including the definition of "firearm" under Minnesota law. Poole points out that,

12

with regard to possession of controlled substance crimes, "the state must prove that defendant consciously possessed, either physically or constructively, the substance and *that defendant had actual knowledge of the nature of the substance*." *State v. Florine*, 303 Minn. 103, 104, 226 N.W.2d 609, 610 (1975) (emphasis added). While the reasoning of *Florine* has been applied to cases involving section 624.713, these cases have used *Florine* to imply a mental state regarding a defendant's knowing possession of a firearm, not a defendant's knowledge of the fact that the possessed object is a firearm under Minnesota law. *See State v. Olson*, 326 N.W.2d 661, 662–63 (Minn. 1982) (citing *Florine* and noting that Olson "consciously exercised" control over a firearm, in violation of Minn. Stat. § 624.713); *State v. Willis*, 320 N.W.2d 726, 728–29 (Minn. 1982) (same).

Moreover, Poole's knowledge that a BB gun is a firearm under Minnesota law is distinguishable from knowledge of the *nature* of a controlled substance because Poole is not arguing that he did not know that the BB gun was a BB gun, but that he was unaware that a BB gun constituted a firearm under Minnesota law. *See State v. King*, 257 N.W.2d 693, 697 (Minn. 1977) (stating that "ignorance of the law is no excuse"); *cf.* Minn. Stat. § 609.02, subd. 9(5) (2014) ("Criminal intent does not require proof of knowledge of the existence or constitutionality of the statute under which the actor is prosecuted or the scope or meaning of the terms used in that statute."). The district court did not err in

instructing the jury that Poole's knowledge that a BB gun is a firearm is not an element of the crime.

**Affirmed.**